(4th Cir. 1999); *cf. Director, OWCP v. Hileman*, 897 F.2d 1277, 1280-81 (4th Cir. 1990) (upholding the propriety of Board's dismissal of OWCP's appeal after the Director failed to guarantee the transmittal of the administrative record to the Board). Thus, in light of the process due, Island Creek would suffer prejudice were we to affirm its designation as a "responsible operator." "If there has been no fair day in court, the reliability of the result is irrelevant, because a fair day in court is how we assure the reliability of results." *Lane Hollow Coal Co.*, 137 F.3d at 808. In the absence of a responsible operator, the Black Lung Disability Trust Fund will pay Holdman's benefits.[5]

## IV. Conclusion

The judgment of the Benefits Review Board is REVERSED, and the matter is REMANDED for reinstatement of the October 7, 1994 order of ALJ Gilday. Our disposition of the matter renders MOOT the Board's holding that Island Creek may not introduce new medical evidence in future remands. *See supra* at 12-14.

---

[5]The Federal Respondent bears the blame for the past fourteen years of litigation in this matter. A record entrusted by law to OWCP has vanished. *Cf. Hileman*, 897 F.2d at 1280-81. The Director ignored repeated requests of the Benefits Review Board to reconstruct the record. When ALJ Gilday attempted to resolve matters, he reported that the Director did not attend or send counsel to the hearing scheduled on September 13, 1994, and that his response to the show cause order did not address some of the material issues. Finally, in its correspondence to Island Creek following the October 30, 1995 Board order, OWCP exhibited misunderstandings of its governing regulations. It appears that the Director and his staff have flirted with incompetence, although we do not have a record establishing that they acted in bad faith.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0037P (6th Cir.)
File Name: 00a0037p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT



ISLAND CREEK COAL COMPANY,
              *Petitioner,*

              *v.*

ARTHUR W. HOLDMAN, (Deceased); DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,
              *Respondents.*

No. 97-4065

On Petition for Review of an Order of the Benefits Review Board.
No. 95-0578 BLA

Argued: December 11, 1998

Decided and Filed: January 27, 2000

Before:  BOGGS and MOORE, Circuit Judges; and
DOWD,[*]  District Judge.

_____

**COUNSEL**

_____

**ARGUED:**  Douglas A. Smoot, JACKSON & KELLY, Charleston, West Virginia, for Petitioner.  Thomas M. Rhoads, RHOADS & RHOADS, Madisonville, Kentucky, Rita Roppolo, U.S. DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., for Respondents. **ON BRIEF:**  Martin E. Hall, JACKSON & KELLY, Lexington, Kentucky, for Petitioner.  Thomas M. Rhoads, RHOADS & RHOADS, Madisonville, Kentucky, Rita Roppolo, Patricia Nece, U.S. DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., for Respondents.

_____

**OPINION**

_____

BOGGS, Circuit Judge.  In a case with a lengthy procedural history, Island Creek Coal Company appeals a decision of the Benefits Review Board of the United States Department of Labor.  The decision required Island Creek to pay Black Lung benefits to a coal miner's widow.  We reverse the decision of the Board and reinstate the 1994 order of the administrative law judge transferring responsibility for the payments to the Black Lung Disability Trust Fund.

_____

[*] The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

Second, Island Creek believes that it suffered because of the incomplete record.  Apparently, Island Creek and Holdman reconstructed the record except for a transcript of Holdman's 1980 testimony before ALJ Rippey, and two of Holdman's exhibits.  Island Creek observes that no party knows what the lost evidence would prove.  This case places Island Creek in the difficult position of rebutting OWCP by proving the contents of twenty-year-old documents lost by OWCP.  For seven years, the Board considered the lost materials necessary to the disposition of Island Creek's 1985 appeal: in 1989, January 1992, and May 1992, the Board issued orders explaining that it could not resolve the appeal without the completed record, and ordering OWCP to supply or reconstruct the record.  In 1993, the Board dismissed the 1985 appeal, stating that it "must have the complete record of the proceedings below before considering the merits of this appeal."  After ALJ Gilday received the assignment to reconstruct the record, he also agreed that the case could not fairly be resolved without the missing evidence.  ALJ Gilday's 1994 order reflects that Holdman's counsel—securely in the possession of an entitlement to benefits—agreed with Island Creek that the missing evidence was "critical."

Substantial evidence—the orders of the Board from 1985-1993, ALJ Gilday's opinion, and the difficulty in proving a negative—supports ALJ Gilday's reasoned conclusion that the missing exhibits were important to the resolution of Holdman's contested claim.  The missing documents could refute, confirm, or shed light on the opinions expressed in the preserved evidence.  "Moreover, speculation about the would-have-been and could-have-been misconstrues the focus of our inquiry.  In this core due process context . . . we do not require a showing of 'actual prejudice' in the sense that there is a reasonable likelihood that the result of this claim would have been different absent the violation."  *Lane Hollow Coal Co. v. Director*, *OWCP*, 137 F.3d 799, 807 (4th Cir. 1998) (ruling that delay in notifying an employer of a claim deprived it of due process, and transferring liability to the Trust Fund); *see also Consolidation Coal Co. v. Borda*, 171 F.3d 175, 184

20 C.F.R. § 727.203(b)(3) does not concern itself with the degree of a medical disability; rather, it requires the employer to prove that coal mining played no role in the miner's disability. *See Warman v. Pittsburg & Midway Coal Mining Co.*, 839 F.2d 257, 260 (6th Cir. 1988); *see also Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 250 (6th Cir. 1995). Island Creek failed to meet its burden of proof. After reviewing the record that we have available, we hold that ALJ Rippey did not err in finding an entitlement of benefits.

## C. Whether the Board Erred by Re-transferring Liability to Island Creek

ALJ Gilday found that, because he could not completely reconstruct the record, the "best interests of justice [were] served by" granting benefits while transferring liability from Island Creek to the Black Lung Disability Trust Fund. He reasoned that, because OWCP was at fault for the years of delay, neither Island Creek nor Holdman's widow should suffer from the incomplete record. The Board reversed his order insofar as it transferred liability to the Trust Fund, in spite of the fact that OWCP lost the record before ALJ Rippey ruled on the motion for reconsideration in early 1985. Island Creek observes that the statute might permit the transfer, as it permits payment by the Trust Fund where, *inter alia*, "there is no operator who is liable for the payment of such benefits." 26 U.S.C. § 9501(d)(1)(B). Island Creek contends that, because OWCP's actions resulted in a denial of due process in the 14 years of proceedings following the disappearance of the record, it cannot be held liable where the violation undermined its ability to present its case fairly.

First, it notes that OWCP, not employers, has the duty to safeguard legal records (especially, we imagine, those in cases where the employer loses before OWCP and the ALJ). *Cf.* 20 C.F.R. § 725.102(a) (making OWCP the official custodian of all documents related to claims of entitlement to benefits). We agree that this responsibility rests with OWCP.

## I. Jurisdiction

### A. Background to the Jurisdictional Dispute

In 1980, an Administrative Law Judge (ALJ) ordered Island Creek Coal Company to pay black lung benefits to Arthur Holdman. Island Creek moved for reconsideration and later appealed to the Benefits Review Board. For various reasons, discussed *infra* at 7-12, the Board did not rule definitively for 15 years. The Board issued its order on October 30, 1995. The Board mailed its order (not by certified mail) to Island Creek's counsel at an incorrect address, sending it to Charleston, West Virginia, rather than to Lexington, Kentucky. On August 2, 1996, Island Creek's counsel inquired about the status of the appeal. That day, either the Board or the Office of Workers' Compensation Programs (OWCP) faxed a copy of the October 30 order, which was received by Island Creek that day.[1] The final footnote of the Board's order read: "We note that employer may file a petition for modification [of the terms of an award] with the district director under the provisions of 20 C.F.R. § 725.310." On September 11, 1996, in a petition to OWCP for modification of the 1980 order, Island Creek's counsel cited some newly-discovered medical evidence as support for modification.

On September 23, 1996, Bobby Chaffins, a senior claims examiner with OWCP, responded, informing counsel that the Board told Chaffins that "the appropriate course of action is for you to file the *appeal* with the Board, not the District Director" (emphasis added). On September 27, counsel asked Chaffins for clarification, explaining that counsel wished to

---

[1]The parties disagree about the source. *Compare* Director's Motion to Dismiss for Lack of Jurisdiction at 3 ("*OWCP* sent a copy of the decision to [counsel] by facsimile.") (filed Dec. 17, 1997) (emphasis added) *with* Island Creek Coal Company's Response to Director's Motion to Dismiss for Lack of Jurisdiction at 2 ("Only then did *the Board* fax a copy . . . .") (filed Dec. 29, 1997) (emphasis added); *see also* Island Creek's Petition for Modification at 1 (filed Sept. 11, 1996).

pursue a petition for modification with the Director, and not an appeal to the Sixth Circuit. Counsel stated his belief that the only appeal from an order by the Board was to the Sixth Circuit.

On November 7, 1996, Harry Skidmore, the OWCP District Director, responded via certified mail. Without citing authority or mentioning the final footnote in the Board's order, he claimed that, because the Board currently had the record in the Holdman case, the Board, and not OWCP, had jurisdiction over the motion for modification. Skidmore enclosed a copy of the October 30 order by the Board and stated that "this correspondence represents your *official notice* of the Board's decision. Absent an appeal being filed by your office within thirty (30) days from the date of this notice with either the Benefits Review Board or Circuit Court, the award will become final . . . ." (emphasis added).

On December 4, 1996, counsel mailed to the Board a motion for reconsideration. On August 21, 1997, the Board denied the motion for reconsideration. Within 60 days, on September 22, Island Creek petitioned this court for review of the Board's orders of October 30, 1995, and August 21, 1997. On December 17, 1997, the Director moved to dismiss the petition for lack of jurisdiction. The Director claimed that the time for action began to run when OWCP faxed the decision to Island Creek's counsel on August 2, 1996. After that date, the Director alleged, Island Creek had two options: file a motion with the Board for reconsideration of the October 1995 order, or petition this court for review. Island Creek did not move for reconsideration until December 4, 1996, and it did not petition for review until September 22, 1997. Thus, claimed the Director, this court lacked jurisdiction over the petition.

Island Creek responded to OWCP's motion by observing that the OWCP Director informed counsel on November 7, 1996, that his letter constituted "official notice," and that Island Creek had thirty days to file a motion for reconsideration with the Board. Within thirty days of the

Anderson's testimony is not sufficient to establish that the Claimant's disability did not arise in whole or in part out of his coal mine employment." The Board correctly upheld ALJ Rippey on these grounds. An ALJ overseeing Black Lung Act claims may discredit medical expert testimony that contains equivocations about the etiology of a disease. *See Griffith v. Director, OWCP*, 49 F.3d 184, 186-87 (6th Cir. 1995) (stating this proposition and citing cases in support); *see also Lane Hollow Coal Co. v. Director, OWCP*, 137 F.3d 799, 804 (4th Cir. 1998) ("[A] physician may opine that a given miner has no pulmonary impairment attributable to coal mine employment because simple pneumoconiosis does not generally cause any pulmonary impairment. The interim regulations presume precisely the opposite, and the presumption must be rebutted with *proof* rather than *disagreement*."). The Board may uphold an ALJ's ruling on one ground if the ALJ errs in a separate basis for a ruling. *See, e.g.*, *Zeigler Coal Co. v. Kelley*, 112 F.3d 839, 843 (7th Cir. 1997).

Finally, Island Creek contends that ALJ Rippey failed to comply with the Administrative Procedure Act, which requires an adequate "statement of . . . findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record . . . ." 5 U.S.C. § 557(c)(3)(A); *see Morehead Marine Servs., Inc. v. Washnock*, 135 F.3d 366, 375 (6th Cir. 1998) ("Absent a specific, and accurate, reference to the evidence supporting an ALJ's decision, we hold that the ALJ has failed to fulfill his duty as required by § 557(c)(3)(A), and we must remand for a proper explanation."). Granted, ALJ Rippey did not discuss at length the evidence supporting Holdman's claim. However, the parties stipulated that Holdman benefitted from the interim presumption. As Island Creek had the burden of rebutting the presumption, ALJ Rippey had only to explain why he found its three medical experts failed to rebut the presumption. He addressed the three medical experts that Island Creek offered, thereby adequately explaining why he found that Island Creek failed to rebut the presumption.

Nevertheless, on reconsideration, he found that the report did not rebut the presumption:

> [H]owever [Dr. Gallo's] opinion is not credible in light of the fact that Claimant could not even complete the pulmonary function tests because of chest pain. Dr. Gallo attributes these chest pains to suggest angina pectoris but never comments on whether Claimant's lung condition, which he diagnosed as pneumoconiosis, contributes to the chest pains. Moreover, Dr. Gallo's report was silent as to whether he considered Claimant to be totally disabled or not and if Claimant is totally disabled whether his disability arises in whole or in part out of coal mine employment.

The Board ruled that ALJ Rippey "acted within his discretion as fact-finder in determining that Dr. Gallo's opinion was insufficient to rule out pneumoconiosis as a cause of the miner's disability." The Board did not err. ALJ Rippey properly found that Dr. Gallo did not rule out pneumoconiosis as a contributing cause of the disability. *Cf. Gibas v. Saginaw Mining Co.*, 748 F.2d 1112, 1120 (6th Cir. 1984) (placing the burden on the employer to show that "pneumoconiosis played no part in causing a miner's disability"), *cert. denied*, 471 U.S. 1116 (1985).

Second, Island Creek contends that, in his 1980 order, ALJ Rippey improperly discredited Dr. Anderson's testimony solely because ALJ Rippey found the testimony contrary to the spirit and assumptions underlying the Black Lung Benefits Act. Dr. Anderson testified that simple pneumoconiosis will not usually disrupt pulmonary function. The Board ruled that, because Dr. Anderson did not rule out the possibility that simple pneumoconiosis may cause pulmonary dysfunction, ALJ Rippey erred by finding the Anderson report inconsistent with the Act. The Board upheld ALJ Rippey's order on other grounds, noting that ALJ Rippey discounted Dr. Anderson's credibility because the doctor used words such as "probably." ALJ Rippey described the testimony as "hedg[ing]," and wrote that, "When viewed in its entirety . . . I find that Dr.

Director's letter (sent by certified mail), Island Creek filed with the Board its motion for reconsideration. Within 60 days of the Board's denial of the motion, Island Creek petitioned this court for review. Therefore, according to Island Creek, we have jurisdiction over this appeal.

### B.  Analysis of Jurisdictional Issue

20 C.F.R. § 802.410(a) provides that, "Within 60 days after a decision by the Board has been filed pursuant to § 802.403(b), any party adversely affected or aggrieved by such decision may file a petition for review with the appropriate U.S. Court of Appeals . . . ." 20 C.F.R. § 802.403(b) provides that, *inter alia*, "[t]he original of the decision shall be filed with the Clerk of the Board," and that "[a] copy of the Board's decision shall be sent by certified mail or otherwise presented to all parties to the appeal and the Director."

The parties agree that the Board sent Island Creek's copy of the 1995 order to the wrong address, and that, in 1995, Island Creek did not receive a copy of the Board's order. Once it somehow learned of the Board's decision,[2] Island Creek attempted to obtain a modification of the ALJ's order, but the OWCP informed Island Creek in a letter dated September 23, 1996 that the Board advised that "the appropriate course of action is for you to file the appeal with the Board, not the District Director." The November 7, 1996 certified mail letter from the OWCP to Island Creek included a copy of the Board's order and informed Island Creek that "this correspondence represents your official notice of the Board's decision," and that "[a]bsent an appeal being filed by your office within thirty (30) days from the date of this notice with either the Benefits Review Board or Circuit Court, the award will become final . . . ." This letter was consistent with the earlier advice by the Board, relayed by Chaffins in the September 23 letter, that no action could be taken on Island

---

[2] See fn. 1

Creek's petition for modification. The Board has never denied this position.

After the Board and OWCP apparently unlawfully foreclosed Island Creek's attempt to obtain redress via a petition for modification (pursuant to 20 C.F.R. § 725.310, a procedure with attendant avenues for hearings and appeal in the event that a party is dissatisfied with the OWCP's resolution of the petition, *see* 20 C.F.R. § 725.419), Island Creek filed with the Board a motion for reconsideration on December 4, 1996 (within thirty days of the November 7 letter sent by certified mail). *See* 20 C.F.R. § 802.407(a) ("Any party-in-interest may, within 30 days from the filing of a decision or non-interlocutory order by a panel or the Board pursuant to § 802.403(b), request reconsideration of such decision by those members who rendered the decision.").

The Board treated the motion as timely and denied it on August 21, 1997. Within sixty days, on September 22, Island Creek petitioned this court for review of the Board's orders. "[A] petition for review under § 921(c) is timely if filed within sixty days of the Board's denial of a timely motion for reconsideration." *Peabody Coal Co. v. Abner*, 118 F.3d 1106, 1108 (6th Cir. 1997). In light of the timely motion for reconsideration, our jurisdiction stems from 33 U.S.C. § 921(c), which provides that, "Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside." The Department of Labor has, by regulation, clarified the various avenues governing the measurement of the date of the start of the 60-day period, *see, e.g.,* 20 C.F.R. § 802.406 ("If a timely request for reconsideration has been filed, the 60-day period for filing such petition for review [with a circuit court of appeals] will run from the issuance of the Board's decision on reconsideration."). In this case, the government similarly clarified that the letter it mailed on November 7, 1996 "represents [Island Creek's] official notice of the

### B. Whether Island Creek Failed to Rebut the Interim Presumption of Entitlement to Benefits

In its October 1995 order, the Board treated Island Creek's cross-appeal as a request to reinstate its prior appeal of 1985 that challenged ALJ Rippey's finding that Island Creek failed to rebut Holdman's presumption of entitlement to benefits. The Board interpreted the appeal in this manner because ALJ Gilday made no findings regarding the initial presumption of entitlement and Island Creek's failure to rebut the presumption. Instead, without elaboration, ALJ Gilday reinstated the benefits and dismissed Island Creek solely because he felt the company suffered a due process violation from OWCP's behavior in the litigation.

On appeal, Island Creek appears to have abandoned its claim that ALJ Rippey erred in finding that Island Creek failed to rebut the presumption pursuant to 20 C.F.R. § 727.203(b)(2) (which allows rebuttal with evidence that shows that the claimant has the ability to perform his "usual coal mine work or comparable and gainful work"). Island Creek contends that ALJ Rippey mistakenly found that Island Creek had not rebutted the presumption pursuant to § 727.203(b)(3), permitting rebuttal where evidence shows "that the total disability or death of the miner did not arise in whole or in part out of coal mine employment . . . ." The company isolates three alleged errors, none of which merit reversal.

First, Island Creek contends that ALJ Rippey inappropriately discounted Dr. Gallo's medical opinion. In his 1985 order denying Island Creek's motion for reconsideration, ALJ Rippey admitted that he erred in overlooking Dr. Gallo's evaluation of pulmonary test results.

---

(b)(3) to focus on (b)(2)). Here, ALJ Rippey twice emphasized that Island Creek focused "primarily" on (b)(3). Therefore, (b)(2)'s formerly-lax standard did not "lull" Island Creek into focusing its efforts on (b)(2) rebuttal to the detriment of its case for (b)(3) rebuttal.

most plausible, interpretation. Presumably, however, the Board may interpret the scope of its ambiguous orders.

Island Creek contends that, because legal standards have changed since 1980, it may, at a new hearing, present new evidence in its defense against the claim of entitlement. Since 1980, the legal interpretation has changed regarding two subsections governing means of rebutting the presumption. *See* Part II.A *supra* (discussing methods of rebuttal). Island Creek contends that the standards for satisfying the "(b)(3)" rebuttal standard have become more stringent since 1980. *See* 20 C.F.R. § 727.203(b)(3) (permitting rebuttal if the employer proves that "total disability . . . did not arise in whole or in part out of coal mine employment"). Island Creek contends that, in 1980, it had to prove only that "no significant" relationship existed between a coal miner's employment and his disability, while the new standard requires the employer to rule out "any" relationship whatsoever between employment and the disability. The Director asserts that the Board followed the "no significant relationship" standard only between 1981 and 1989, so that, if a new hearing occurs, Island Creek would face the same standard it faced in 1980. The Director accurately describes the evolution of Board precedent. Island Creek has no right to introduce new evidence. *See Faries v. Director, OWCP*, 909 F.2d 170, 175 (6th Cir. 1990) (finding no due process violation in Black Lung Benefits Act hearings where "the applicable legal standard travelled a full circle beginning and ending at the same place").[4]

---

[4] Island Creek also cites the decision in *York v. Benefits Review Bd.*, 819 F.2d 134 (6th Cir. 1987), which changed the standard for § 727.203(b)(2) rebuttal. Island Creek contends that the *York* decision also changed the standard for § 727.203(b)(3) rebuttal. This is incorrect. *See Peabody Coal Co. v. White*, 135 F.3d 416, 419 (6th Cir. 1998). Also, Island Creek contends that, because the (b)(2) standard changed, it may introduce new evidence in its (b)(3) challenge. We permit such evidence only if the formerly-lax (b)(2) standard lulled employers into attempting primarily to rebut the presumption via (b)(2). *See Island Creek Coal Co. v. Hammonds*, No. 94-4110, 1996 WL 135019, at *4 (6th Cir. Mar. 25, 1996) (unpublished) (denying remand where Island Creek did not ignore

Board's decision" and that "[a]bsent an appeal being filed . . . within thirty days from the date of this notice . . ., the award will become final . . . ."

The crux of the jurisdictional question is what constitutes "issuance of such order" under the statute and regulation. The seemingly relevant regulation, § 802.407(a), does not use "issuance" but instead refers to "a decision by the Board [that] has been filed pursuant to § 802.403(b)," to start the thirty days for filing a request for reconsideration. The referenced § 802.403(b) makes two statements: "that the original of the decision shall be filed with the clerk of the Board," and that "a copy . . . shall be sent by certified mail or otherwise presented" to all parties. A very literal interpretation would mean that giving the decision to the clerk is sufficient to start the time period, and it doesn't matter whether the parties ever get notice. Not even the Board and the Director take this position, as they contend that the time began to run with the faxing of the opinion on August 2. Thus, the effect on the time limit of the Board's treatment of its own decision is a matter that is subject to some interpretation.

Island Creek attempted to undertake a specific lawful and timely procedure for obtaining further review of its claims by a petition for modification. It was specifically informed by OWCP, speaking for the Board and presenting a position that has never been repudiated by the Board, that such a procedure was not possible, and it was then specifically sent a copy of the Board's decision and specifically told that that copy had the timeliness consequences that were specified for a filing of the opinion under § 802.410(a) and § 802.403(b). Island Creek's December 4 filing thus served as a timely motion for reconsideration, permitting us to turn to the merits of Island Creek's petition for review.

## II.  Factual and Procedural Background

### A.  Initial Award of Black Lung Benefits

In 1978, Arthur W. Holdman filed a claim with the United States Department of Labor (DOL) for benefits under the

Black Lung Benefits Act, 30 U.S.C. §§ 901-930. As of 1978, Holdman was 57 years old and had worked in coal mines for 30 years, the last ten of which he had spent working for Island Creek. He stopped working in June 1978. DOL's Office of Workers' Compensation Programs (OWCP) awarded benefits to Holdman, and it ordered Island Creek to pay them. Island Creek disputed this result and requested a hearing.

On June 24, 1980, ALJ Charles P. Rippey presided over a hearing involving Holdman and Island Creek. The parties stipulated that the medical evidence showed that Holdman benefitted from the "interim presumption" of 20 C.F.R. § 727.203(a). The April 1998 version of 20 C.F.R. § 727.203(a) reads, in part, "A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis . . . if one of [several enumerated] medical requirements is met." ALJ Rippey's decision shows that the medical experts came to different conclusions, and ALJ Rippey found that Holdman suffered from "simple pneumoconiosis," as opposed to complex pneumoconiosis or none at all.

While it since has been amended, the 1980 version of 20 C.F.R. § 727.203(b) listed four means of rebutting the interim presumption. Subsections 727.203(b)(1) & (2) state that the presumption is rebutted if the employer shows that the claimant is doing, or is able to do, "his usual coal mine work or comparable and gainful work." Subsection 727.203(b)(4) allows rebuttal of the presumption when a party shows that "[t]he evidence establishes that the miner does not . . . have pneumoconiosis." ALJ Rippey found "no analysis which even approaches the possibility of rebutting the presumption under any of those subsections."

ALJ Rippey twice remarked that Island Creek "primarily" relied on 20 C.F.R. § 727.203(b)(3), which declares the presumption rebutted if the "evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment . . . ." ALJ Rippey rejected the reports of Island Creek's three medical experts, finding

Creek's appeal to the OALJ "for further proceedings, including reconstruction of the record and, if necessary, a new hearing [footnote]." The footnote read, "We note that Mr. Holdman died on July 6, 1987." ALJ Gilday's order states that he held no hearing, but that he received evidence into the (new) record. The parties produced copies of whatever old exhibits they had in their files, and Island Creek produced several new depositions and reports taken or created in 1994. It is unclear whether ALJ Gilday entered the new evidence in the record, because ALJ Gilday based his ruling on perceived due process violations by the Director rather than on the evidence of Holdman's disability. ALJ Gilday's order reinstated benefits while dismissing Island Creek from the case; nothing suggests that he reviewed the new evidence or made any new findings about entitlement. "It readily appeared that the record cannot be recreated or reconstructed and that, once again, the Board has ordered an Administrative Law Judge to perform an exercise of utter futility," he wrote.

When Island Creek cross-appealed after ALJ Gilday's ruling, the Board noted that the company had asserted in the cross-appeal that, if the Board reinstated Island Creek as the responsible operator, "employer 'retains the right to contest entitlement.'" The Board refused to permit ALJ Gilday to reconsider entitlement in the event that the Board remanded the case. The Board stated that, "Judge Gilday erred in admitting newly developed evidence into the record inasmuch as he was confined to the scope of proceedings dictated by the Board's remand order," which it interpreted as remanding the case "for the specific purpose of reconstructing an incomplete record and holding a new hearing if necessary."

Given that the Board knew that Holdman had died, its remand order appears to have anticipated the introduction of new evidence if ALJ Gilday found that he could not reconstruct the original record. One can read the original order to permit a hearing only to reconstruct, not supplement, the record (*e.g.*, the order remanded "for further proceedings, including reconstruction of the record and, if necessary, a new hearing"), but this does not appear to be the only, or even the

the Director of OWCP responsible for OWCP's failure to transmit the record, and for ignoring the Board's orders to produce the record and to remand the case for reconstruction of the record. Finding the record inadequate to resolve the legal issues, the order reinstated the benefits, ordered them paid to Holdman's widow from the Black Lung Trust Fund, and dismissed Island Creek from the case.

### E. The Only Consummated Appeal of Island Creek to the Board

After ALJ Gilday issued his order, the Director appealed and Island Creek cross-appealed. The Director claimed that ALJ Gilday erred in transferring liability from Island Creek to the Trust Fund, and Island Creek challenged the finding of an entitlement to benefits. The Board found in the Director's favor, ruling that ALJ Gilday erred in transferring liability. The Board treated Island Creek's cross-appeal as a request to re-open the 1985 appeal to the Board for review of ALJ Rippey's finding that Island Creek failed to rebut the presumption of entitlement. The Board held that ALJ Rippey did not err in finding that Island Creek failed to rebut the presumption of entitlement. Finally, the Board held that ALJ Gilday erred by admitting newly-developed evidence into the record; the Board contended that it had authorized OALJ only to reconstruct the old record and to hold a hearing if necessary. Island Creek petitioned this court for relief.

### III. Substantive Issues

This court reviews decisions of the Board to determine whether substantial evidence supports the Board's holding. *See Cal-Glo Coal Co. v. Yeager*, 104 F.3d 827, 830 (6th Cir. 1997). This court reviews de novo the Board's legal conclusions. *See ibid.*

### A. Whether the Board Erred By Ruling that ALJ Gilday Mistakenly Admitted New Evidence

In 1993, after repeated and fruitless requests to the OWCP to produce the missing record, the Board remanded Island

the reports lacking in credibility and insufficient to rebut the presumption in light of § 727.203(b)(3)'s requirement that the employer show that the disability "did not arise in whole or *in part* out of coal mine employment" (emphasis added). ALJ Rippey concluded by ordering Island Creek to pay benefits to Holdman, augmenting the benefits because Holdman had a dependent, his wife Hallie.

### B. Reconsideration of the ALJ's Order

On October 20, 1980, Island Creek moved for reconsideration. It observed that ALJ Rippey had dismissed the report of one expert, Dr. Gallo, because ALJ Rippey found it lacked credibility because he thought Dr. Gallo was "without the benefit of any pulmonary function tests results." Island Creek referred to Dr. Gallo's report, wherein Dr. Gallo apparently wrote that "[p]ulmonary function test demonstrates a normal spirogram."

On March 1, 1982, ALJ Rippey issued an order. In it, he stayed his prior award of attorney fees against Island Creek, pending the resolution of the motion for reconsideration. He explained: "That motion [for reconsideration], which was inadvertently misplaced, necessitates the recalling of the full record a process that will take approximately three to four weeks." *Two years* passed.

On April 24, 1984, the Office of Administrative Law Judges, DOL, requested that OWCP return the record to ALJ Rippey.[3] The Director of OWCP, the Federal Respondent, asserts that an illegible receipt shows that OWCP sent the record by certified mail on April 30, 1984. The Office of Administrative Law Judges (OALJ) never received the record; internal handwritten OWCP memoranda, mostly illegible, suggest that the post office erred. The Pikeville, Kentucky Post Office issued a Mail Nondelivery Report which shows that DOL complained about the non-delivery.

---

[3] Support for this paragraph comes from material not in the record, but helpful to explain the chronology of this appeal.

In 1985, ALJ Rippey contacted Holdman and Island Creek and asked them to reconstruct from their own files the pertinent medical evidence.  Holdman's attorney mailed a letter to ALJ Rippey that claimed to enclose copies of several of the original exhibits and reports, including "Dr. Gallo's two-page pulmonary evaluation report."  OWCP provided only administrative documents, offering no documents "relative to the merits of the case."  ALJ Rippey issued an order denying the motion for reconsideration.  He said he found the reconstructed record "sufficient to base this opinion on"; he admitted that his 1980 order overlooked Dr. Gallo's pulmonary function study, but he found that Dr. Gallo's pulmonary evaluation report did not rebut the interim presumption.

### C.  Island Creek's Abortive Appeal to the Benefits Review Board

In June 1985, Island Creek appealed to the Benefits Review Board ("Board") the denial of the motion for reconsideration.  Holdman died on July 6, 1987.  *Four years* after Island Creek filed its appeal, the Board issued an order on April 14, 1989.  In the order, the Board remarked that the record lacked several items, including a transcript of the June 24, 1980 hearing, and ten exhibits.  The Board ordered the Director of OWCP to forward the missing documents to the Board by June 1, 1989.  On June 1, 1989, the OWCP responded by claiming that it had already sent all the documents it had, and that, "[a]fter diligent search, the undersigned has been unable to locate the litigation file for this case, and, consequently, the Director cannot comply with the Board's order."  After *three more years*, on May 22, 1992, the Board remanded the case to OWCP "for re-creation of the record.  When the record has been re-created, the deputy commissioner shall, as expeditiously as possible, forward the case record to the Board so the appeal may be heard on its merits."  Apparently, OWCP took no action in response to this order.

In July 1993, *eight years* after Island Creek appealed, the Board issued yet another order, remarking that the Director

had failed to respond to *any* of the four Board orders demanding the reconstruction of the record. "The Board must have the complete record of the proceedings below before considering the merits of this appeal," wrote the Board.  The Board remanded the case to OALJ for further proceedings, "including reconstruction of the record and, if necessary, a new hearing."

### D.  Proceedings Before ALJ Gilday

OALJ assigned the case to ALJ Bernard J. Gilday, and the parties attempted to re-construct the record.  ALJ Gilday scheduled a hearing on September 13, 1994, in Madisonville, Kentucky.  Island Creek appeared, the Director for OWCP did not attend or send counsel, and Holdman's widow's attorney appeared.  ALJ Gilday limited the scope of the hearing and accepted newly-developed evidence from Island Creek and Holdman's widow, including 1994 depositions of some of the medical experts from the 1980 hearing.  The parties did not have a transcript of the June 24, 1980 hearing (at which Holdman testified), and the parties could not reconstruct all the exhibits.

Apparently, ALJ Gilday was displeased by the Director and OWCP, as he felt that they had repeatedly ignored Board orders; had held Holdman, his wife, and Island Creek "in limbo" for almost ten years; and also did not appear (as requested) at the September 13, 1994, hearing before ALJ Gilday.  ALJ Gilday ordered the Director to show cause why Gilday should not reinstate benefits to Holdman's widow and order the benefits paid from the Black Lung Trust Fund.  The Director filed a three-paragraph answer, disclaiming fault for the loss of the record and tersely remarking that, "it is not in the best interest of justice to require the Trust Fund to pay these benefits."

On October 7, 1994, ALJ Gilday filed an order, lamenting that "once again, the Board has ordered an Administrative Law Judge to perform an exercise of utter futility".  In it, he lambasted the OWCP for its legalistic response that failed to address whether to reinstate the benefits.  ALJ Gilday found