104 F.3d 827
 CAL-GLO COAL COMPANY and Old Republic Insurance Company, Petitioners,
v.
James H. YEAGER and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 95-4038.
 United States Court of Appeals,
Sixth Circuit.
 Submitted Sept. 18, 1996.
Decided Jan. 14, 1997.
 
 Laura Metcoff Klaus, Mark E. Solomons (briefed), Arter & Hadden, Washington, DC, for Cal-Glo Coal Company, Old Republic Insurance Company.
 Kenneth S. Stepp (briefed), Kenneth S. Stepp, P.A., P.S.C., Barbourville, KY, for James H. Yeager.
 Christian P. Barber, Edward Waldman, U.S. Department of Labor, Office of the Solicitor, Washington, DC, for Director, Office of Workers' Compensation Programs, United States Department of Labor.
 Before: GUY and RYAN, Circuit Judges; JARVIS, Chief District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 The petitioners, employer Cal-Glo Coal Company and its insurer Old Republic Insurance Company, seek review of a decision by the Benefits Review Board affirming an administrative law judge's award of benefits to James H. Yeager under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945. Cal-Glo argues that the BRB erred in refusing to allow Cal-Glo to present new evidence to the ALJ in light of a change in legal standards that occurred after the ALJ rendered his first decision, in which Yeager was denied benefits. We agree, and will reverse the BRB's order and remand for further proceedings.
 
 I.
 
 2
 The relevant facts are not in dispute. Yeager worked as a coal miner for a number of different coal companies over a period of almost 15-1/2 years. He worked for Cal-Glo for approximately four of those years. Yeager initially filed an application for benefits in 1975.
 
 
 3
 In the first federal decision in Yeager's case, issued in December 1986, the ALJ concluded that Cal-Glo was the coal-mining employer responsible for Yeager's ailments--in black lung parlance, the "responsible operator." The ALJ then considered interpretations by 28 different doctors of 14 separate chest x-rays for Yeager. Eighteen of those interpretations were positive for pneumoconiosis, and 10 were negative. The ALJ selected the most recent x-ray as the most probative of the miner's present condition, and concluded that "the greater weight of the x-ray evidence supports the consistently positive for pneumoconiosis interpretations of that x-ray." He therefore invoked the so-called "interim presumption" in favor of disability under 20 C.F.R. § 727.203(a)(1), and proceeded to a consideration of whether the employer had rebutted that presumption.
 
 
 4
 After an extensive review of the medical evidence, the ALJ concluded that "[t]he greater weight of the medical opinion evidence and the pulmonary function evidence each demonstrate that the miner suffers from a respiratory or pulmonary impairment. Therefore, in order to establish ... rebuttal, the Employer must show that the impairment does not prevent the miner from performing his usual coal mine employment or comparable and gainful work." The ALJ found that the employer had made the necessary showing under 20 C.F.R. § 727.203(b)(2), because Yeager's pulmonary impairment was mild, and his usual coal mine employment required only minimal exertion. The ALJ concluded, therefore, that Yeager was not entitled to benefits.
 
 
 5
 Yeager appealed to the BRB, disputing the finding that his coal work required only minimal exertion. In November 1988, although rejecting Yeager's argument, the BRB vacated and remanded the case on an entirely different basis, not suggested by either party. The BRB observed, that in York v. Benefits Review Board, 819 F.2d 134 (6th Cir.1987), this court held
 
 
 6
 that in order to establish rebuttal ... it must be shown that the miner is not disabled "for whatever reason." A showing that the miner is not disabled for pulmonary or respiratory reasons is not sufficient to establish rebuttal ... [;] rather the evidence must establish that claimant is able to perform his usual coal mine work.
 
 
 7
 York issued after the ALJ's decision in this case, and therefore required a remand.
 
 
 8
 Four days after the BRB's remand, the ALJ sua sponte issued an order precluding the introduction of any additional evidence, on the ground that the record was complete "in all respects." The record does not reflect that either party then requested a new trial for the purpose of presenting new evidence, or requested the ALJ to reopen the record.
 
 
 9
 On remand, the ALJ awarded benefits to Yeager. He noted that he had made, and continued to adhere to, "the finding that the pulmonary function study evidence fully supports the conclusion that [Yeager] is totally disabled." He then noted disagreement among the medical reports about the extent of Yeager's impairment, and concluded that
 
 
 10
 "[t]he greater weight of the evidence demonstrates that [Yeager] has either totally disabling pneumoconiosis or that he is disabled by a combination of heart disease and pneumoconiosis. I do so find." (Emphasis added.) The ALJ concluded that the employer had not rebutted the presumption by showing that "pneumoconiosis play[ed] no part in [Yeager's] total disability," and therefore awarded benefits.
 
 
 11
 Following this decision came a flurry of appeals and motions for reconsideration by the employer, none of which bore fruit. The employer argued that (1) it should not have been subject to the standard set out in York, based on its belief that York was wrongly decided, and, alternatively, (2) because York changed the legal standard applicable under 20 C.F.R. § 727.203(b)(2), it should be permitted to submit new evidence that would support rebuttal under different regulatory grounds.
 
 
 12
 In August 1995, the BRB issued its decision. It rejected the first argument, simply interpreting the applicable precedent differently, and also rejected the second argument on the ground that
 
 
 13
 the administrative law judge permissibly found ... that [Yeager] is totally disabled due to pneumoconiosis, [and] the administrative law judge's ... findings would [therefore] have been the same under the [ ] rebuttal standard [in effect prior to York ]. Therefore ... employer was not prejudiced by the administrative law judge's application of York ....
 
 
 14
 The BRB's decision appears to ignore the precise language of the ALJ's decision, which relied on a finding either of disability due to pneumoconiosis or a combination of heart disease and pneumoconiosis.
 
 
 15
 From the BRB's final Decision and Order on Motion for Reconsideration, Cal-Glo filed a timely petition to this court.
 
 II.
 
 16
 This court has a very narrow scope of review over decisions of the BRB, see Harlan Bell Coal Co. v. Lemar, 904 F.2d 1042, 1045 (6th Cir.1990), and is "limited to a determination whether the outcome below is supported by substantial evidence and was reached in conformance with applicable law," York, 819 F.2d at 136. This court conducts plenary review of the BRB's legal conclusions. See Brown Badgett, Inc. v. Jennings, 842 F.2d 899, 901 (6th Cir.1988).
 
 III.
 
 17
 The Black Lung Benefits Act was enacted to "provide benefits ... to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease." 30 U.S.C. § 901(a). Under the Act, pneumoconiosis is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b).
 
 
 18
 Under 20 C.F.R. § 727.203(a), a black lung disability claimant whose claim was filed prior to April 1, 1980, is presumed to be totally disabled due to pneumoconiosis resulting from coal mine employment, if he was engaged in coal mine employment for at least ten years, and if (1) a chest x-ray establishes the presence of pneumoconiosis; (2) ventilatory studies establish the presence of a respiratory or pulmonary disease--not necessarily pneumoconiosis--of a specified severity; (3) blood gas studies demonstrate the presence of an impairment in the transfer of oxygen from the lungs to the blood; or (4) other medical evidence, including the documented opinion of a physician exercising reasonable medical judgment, establishes the presence of a totally disabling respiratory impairment. Cal-Glo does not dispute that the interim presumption was correctly invoked.
 
 
 19
 Section 727.203(b) provides four methods by which the employer can rebut the interim presumption:
 
 
 20
 (b) Rebuttal of interim presumption. ... The presumption in paragraph (a) of this section shall be rebutted if:
 
 
 21
 (1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work ...; or
 
 
 22
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work ...; or
 
 
 23
 (3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or
 
 
 24
 (4) The evidence establishes that the miner does not, or did not, have pneumoconiosis.
 
 
 25
 As already described, the ALJ in this case initially decided that the employer had rebutted the presumption under (b)(2), but on remand, changed his mind based on the teachings of this court in York. While there is no question that (b)(1) and (b)(4) do not apply to this case, the employer now suggests that it was entitled to present evidence demonstrating rebuttal under (b)(3). Rebuttal under (b)(3) may be established by proving " 'that pneumoconiosis was not a contributing cause to a miner's disability.' " Warman v. Pittsburg & Midway Coal Mining Co., 839 F.2d 257, 259 (6th Cir.1988) (quoting Welch v. Benefits Review Board, 808 F.2d 443, 445 (6th Cir.1986)).
 
 
 26
 In York, this court altered the then-existing (b)(2) rebuttal standard, interpreting (b)(2) rebuttal as requiring a showing that "the miner is not disabled." York, 819 F.2d at 138. Thus, an employer "cannot merely rely upon a showing [that] the miner was not totally disabled by the respiratory impairment alone." Id. An employer who wishes to concede that an employee is disabled, but to argue that some malady other than or in addition to a respiratory ailment is responsible for the disability, must establish rebuttal under (b)(3) or (b)(4):
 
 
 27
 In order to rebut [the claimant]'s presumed entitlement for the reasons given by the ALJ--that [the claimant] was not disabled by the respiratory impairment but by his back injury and non-work related bronchitis--the Director was required to prove either that [the claimant] had no pneumoconiosis under § 727.203(b)(4), or that his total disability did not arise in whole, or in part, out of his coal mine employment, under § 727.203(b)(3).
 
 
 28
 Id. at 137. In short, a "determination that [a claimant] was not totally disabled solely by his respiratory impairment ... does not prove that [the claimant] is able to do his usual coal mine work or comparable work" within the meaning of (b)(2). Id.
 
 
 29
 Cal-Glo argues that it is patently unjust to change the law after a case has been tried and then refuse to permit the employer to respond. It contends that if York had been the law at the time of the first trial, its approach to the case would have been entirely different, and that the application of York therefore imposed obvious burdens it could not be expected to have anticipated. In so arguing, Cal-Glo relies heavily on Harlan Bell, 904 F.2d at 1042. In Harlan Bell, this court considered a case in which an ALJ had found the employer had rebutted the interim presumption pursuant to (b)(2). Following the ALJ decision, however, this court decided York. On appeal to the BRB, the employer argued that if the BRB found York dispositive, "then the case should be remanded to the ALJ because the new standards announced in York had substantially undermined [the employer]'s defense," and it wished to be able to submit evidence under (b)(3). Id. at 1045. The BRB reversed the ALJ decision, but did not allow the employer to submit new evidence to the ALJ. On appeal to this court, the employer argued that the BRB erred by not remanding the case to the ALJ for reconsideration under the standards established in York. This court wrote as follows:
 
 
 30
 If the ALJ or the Board has erred by ignoring important facts or reviewing evidence under an incorrect legal standard, then we must remand the case for additional proceedings. Where the applicable law has changed prior to the closing of the trial record, it is especially appropriate to remand the case and to allow both parties to present proof directed at the new legal standard.
 
 
 31
 Id. at 1046 (emphasis added) (citation omitted). Applying the foregoing rule to the facts in its case, it made observations relevant to this case:
 
 
 32
 The ALJ determined that [the employer] had established rebuttal under § 727.203(b)(2), and thus, [the claimant] was not entitled to benefits. The ALJ, however, did not consider whether or not [the claimant] was disabled by reason of a non-pulmonary or non-respiratory impairment. Moreover, the ALJ did not evaluate comprehensively [the claimant]'s claim under the rebuttal standard of § 727.203(b)(3). Most importantly, the ALJ did not consider [the claimant]'s claim under the post-York standards.
 
 
 33
 When the Board discovered that the record evidence had not been reviewed under § 727.203(b)(3) nor the post-York standards, the Board should have remanded the case and instructed the ALJ to review it under the correct legal standards.
 
 
 34
 Id. The court further held that on remand, the employer must be allowed to present additional evidence:
 
 
 35
 [B]efore the advent of York, the ALJ found that the record evidence did establish § 727.203(b)(2) rebuttal. At that time, it was unnecessary for [the employer] to respond to [the claimant]'s claims of heart and back impairments because the record evidence failed to meet the regulatory and pre-York requirement that [the claimant] be "totally disabled by the respiratory impairment alone." Second, in light of the post-York standards, it is entirely reasonable to now grant [the employer] an opportunity to reestablish § 727.203(b)(2) rebuttal or to establish § 727.203(b)(3) rebuttal. Third, because the legal standards changed after [the claimant]'s ALJ hearing, a manifest injustice would result if [the employer] were denied the opportunity to rebut evidence of [the claimant]'s disabling back, heart, and respiratory or pulmonary impairments. Fundamental fairness requires that [the employer] be granted an opportunity to address comprehensively the post-York standards.
 
 
 36
 Id. at 1047-48 (citations omitted); accord Peabody Coal Co. v. Greer, 62 F.3d 801, 804 (6th Cir.1995).
 
 
 37
 We address first Yeager's argument that Cal-Glo has forfeited the right to present new evidence because Cal-Glo did not make such a request to the ALJ. We reject the argument on three independent grounds. First, as Cal-Glo correctly observes, the ALJ's issuance of an order stating that he would not accept any new evidence effectively operated as a preemptive strike, reasonably, or perhaps unreasonably, foreclosing Cal-Glo from making any such request of the ALJ. Second, as Cal-Glo points out, it made the request during the course of the administrative proceedings, albeit not before the ALJ, and Yeager never cried foul; in other words, if anyone has forfeited the right to make the argument he advances on appeal, it is Yeager. Third, the BRB addressed Cal-Glo's request on the merits, apparently not disturbed by Cal-Glo's failure to make the request of the ALJ in the first instance. Thus, given that the BRB has considered and addressed the request, there is no reason why this court should not do so as well.
 
 
 38
 Turning to the merits of Cal-Glo's argument, we conclude that Harlan Bell quite clearly requires that Cal-Glo have an opportunity to present new evidence in light of the altered York standard. Indeed, we note that Yeager does not even attempt to offer any coherent reason why Harlan Bell should not apply. Prior to York, Cal-Glo had no reason to attempt to satisfy either the then-nonexistent York standard, or the (b)(3) standard, which at the time was more difficult to satisfy than (b)(2). As it stands now, however, Cal-Glo may be able to present evidence that could satisfy either standard, and it should have the chance to do so.
 
 
 39
 We note, parenthetically, that we are utterly at a loss to understand the BRB's apparent reluctance to implement this court's teaching in York, and its refusal to follow this court's teaching in Harlan Bell--a lesson we had to repeat in Peabody, a decision issued approximately one week after the BRB's decision in this case. Let there no longer be, if there ever reasonably was, any ambiguity on this score: when an employer rebuts the interim presumption under the pre-York standard applicable to § 727.203(b)(2), but not under the post-York standard, the BRB commits a manifest injustice if it refuses to allow the employer to present new evidence to the ALJ that the employer believes will establish rebuttal either under the post-York standards applicable to § 727.203(b)(2) or another regulatory subsection.
 
 IV.
 
 40
 We REVERSE the BRB's order because Cal-Glo was afforded no opportunity to rebut Yeager's claims with new evidence directed at establishing rebuttal under another regulatory subsection, and we REMAND the case to the BRB with instructions to send this matter to the ALJ for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable James H. Jarvis, II, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation