RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0345a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

JUANA VILLEGAS DE LA PAZ,

                 *Petitioner,*

    *v.*

ERIC H. HOLDER, JR., Attorney General, and
JANET NAPOLITANO, Secretary of the
Department of Homeland Security,

                 *Respondents.*

No. 09-3229

On Petition for Review from a Final Order
of the Department of Homeland Security.
No. A074 393 672.

Argued: January 20, 2010

Decided and Filed: November 8, 2010

Before: SUHRHEINRICH, McKEAGUE, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Elliott Ozment, Nashville, Tennessee, for Petitioner. Kelly J. Walls, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Elliott Ozment, Nashville, Tennessee, for Petitioner. Kelly J. Walls, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## AMENDED OPINION

_____

KETHLEDGE, Circuit Judge. Juana Villegas de la Paz has twice entered the United States without authorization. She now seeks review of a 2008 order that reinstated what the Department of Homeland Security says was an earlier order

excluding Villegas from the country. We conclude that we have jurisdiction over her petition, notwithstanding the government's argument that its own actions deprive us of it. But we conclude as well that her claims fail on the merits. We therefore deny the petition.

I.

Villegas is a citizen of Mexico. She attempted to enter the United States on March 3, 1996, presenting documents belonging to another person. After being detained at the border, she admitted that she had no legal right to enter the country. She appeared before an immigration judge on March 11, 1996, and returned to Mexico that day. The parties dispute whether the IJ formally ordered her removed.

Villegas illegally re-entered the United States about ten days later, this time without inspection and without being detained. Over twelve years later—on July 3, 2008, while driving near Nashville, Tennessee—she was pulled over by a Davidson County Sheriff's deputy for a routine traffic stop. She was nine-months pregnant at the time. After she failed to produce a driver's license, the deputy arrested her. Under the so-called "287(g) program," *see generally* 8 U.S.C. § 1357(g), the Sheriff has a contract with DHS to perform certain federal immigration functions; and in that capacity the deputy ran Villegas's fingerprints through an FBI database while booking her. The check revealed a 1996 order of exclusion. When the deputy asked Villegas about it, she admitted appearing in immigration court in March 1996, but denied that she had been ordered excluded. Villegas also said that she wanted a lawyer, at which point the deputy ended the interview; but he did execute an immigration detainer, whose effect was to keep Villegas in custody during the pendency of her traffic charges. (Villegas gave birth while in custody two days later, and alleges that the deputies shackled her hands and feet to a hospital bed before, during, and after delivery. But that is the subject of another lawsuit. *See Villegas v. Davidson County Sheriff's Office*, No. 09-CV-00219 (M.D. Tenn. filed March 4, 2009).)

On July 9, while Villegas was detained at the county jail, a deputy presented her with a DHS Form I-871, entitled "Notice of Intent/Decision to Reinstate Prior Order."

That form is presented to an alien when an immigration officer determines that she has re-entered the United States after being subject to a prior order of removal. *See generally* 8 C.F.R. § 241.8. Villegas signed the form to acknowledge receiving it, but checked a box indicating that she wished to make a statement contesting the deputy's determination. *See id.* § 241.8(b). The Sheriff then released her from custody, on condition that she report to DHS once per month. The next day—before Villegas was able to make her statement contesting the deputy's determination—an actual DHS officer in Nashville executed an order reinstating her 1996 order of removal.

It took DHS seven months to provide Villegas or her attorney with a copy of that reinstatement order, or even to inform her of its existence. That was not for a lack of asking: Within days of her release from jail, Villegas hired a lawyer, Elliott Ozment, who promptly made several requests pursuant to the Freedom of Information Act for expedited production of Villegas's immigration file. DHS refused to give the requests expedited treatment and ultimately produced nothing in response to them.

Meanwhile, as directed, Villegas reported to DHS each month. DHS apparently said nothing about the reinstatement order during those visits; but during Villegas's February 2009 visit, a DHS officer told her that she would be removed to Mexico the following month. Villegas reported that fact to Ozment, who realized that DHS must have entered the reinstatement order, notwithstanding the agency's refusal to produce it to him. So he immediately demanded the order's production again. Inertia prevailed for another eight days—DHS's internal email traffic said that "any inquiries from Mr. Ozment must be pushed to a supervisor"—but finally DHS faxed the reinstatement order to Ozment on February 17, 2009, more than seven months after it was executed, and nearly as long after he had first asked for it.

II.

Villegas filed her petition for review of the reinstatement order only 16 days after first receiving a copy of it. And yet, in the government's view, it was Villegas, rather than DHS, who failed timely to act. The government does not dispute that we treat reinstatement orders precisely as we do removal orders for purposes of our jurisdiction

to review them under 8 U.S.C. § 1252(b).  Gov't Br. at 2; *see generally Warner v. Ashcroft*, 381 F.3d 534, 536 (6th Cir. 2004).  Accordingly, the government agrees, the 30-day limitations period set forth in § 1252(b)(1) applies to petitions for review of reinstatement orders just as it does to removal orders.  The government then notes that DHS entered its reinstatement order on July 10, 2008, and that Villegas did not file her petition until March 5, 2009—which was more than 30 days after the order was entered.  Thus, the government argues, we lack jurisdiction to review the order.  The government omits to note, anywhere in its brief, that DHS itself withheld the order from Villegas for more than seven months.

The argument is remarkable.  We are accustomed in immigration cases to being told by the government that we lack jurisdiction over one thing or another.  For the most part, Congress can grant or withhold jurisdiction as it pleases; and if Congress has chosen to withhold jurisdiction in a particular circumstance, the government simply does its duty when it informs us of the fact.  But it is another matter altogether to hear that *the Executive's own actions* serve to strip us of jurisdiction to review the Executive's decision in an immigration case.  That sort of arrogation runs through the separation-of-powers tripwires in a way that simple application of a Congressional rule does not; and this case is not the first, of late, in which that perimeter has been breached.  In *Madrigal v. Holder*, 572 F.3d 239 (6th Cir. 2009), the government had forcibly removed Maria Madrigal from the United States, over her repeated and, in the end, emergency objection.  Before us, the government argued that Madrigal had abandoned her appeal, thus depriving us of jurisdiction to consider it—because she had left the country.  We rejected the argument emphatically:  "To allow the government to cut off Madrigal's statutory right to appeal an adverse decision, in this manner, simply by removing her before a stay can be issued or a ruling on the merits can be obtained, strikes us as a perversion of the administrative process."  *Id.* at 245.

The same can be said for allowing the government to cut off judicial review of a reinstatement order by withholding it from the affected alien for seven months.  Allowing that kind of ball-hiding to prevent review of the government's order would

effect precisely the kind of perversion that we found repellent in *Madrigal*.  If the government chooses to make these arguments, it can expect strong resistance on separation-of-powers grounds.  *See Kucana v. Holder*, 130 S. Ct. 827, 831 (2010) (expressing reluctance "to place in executive hands authority to remove cases from the Judiciary's domain").

The argument has more prosaic defects as well.  As noted above, this circuit, like every other to have addressed the issue, treats reinstatement orders like removal orders for purposes of our review of them.  *See Warner*, 381 F.3d at 536; *see also, e.g.*, *Ojeda-Terrazas v. Ashcroft*, 290 F.3d 292, 295 (5th Cir. 2002); *Velasquez-Gabriel v. Crocetti*, 263 F.3d 102, 105 (4th Cir. 2001); *Castro-Cortez v. INS*, 239 F.3d 1037, 1043-44 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006).  Part of the regime governing review of removal orders is that the 30-day period for filing a petition does not commence until the agency properly serves the alien with the order.  *See Bonca v. INS*, 16 F.3d 1218 (table), 1994 WL 28464 (6th Cir. 1994); *see also, e.g.*, *Sieprawski v. Att'y Gen.*, 218 F. App'x 201, 204 (3d Cir. 2007); *Radkov v. Ashcroft*, 375 F.3d 96, 99 (1st Cir. 2004); *Singh v. INS*, 315 F.3d 1186, 1188 (9th Cir. 2003); *Zaluski v. INS*, 37 F.3d 72, 73 (2d Cir. 1994); *Ouedraogo v. INS*, 864 F.2d 376, 378 (5th Cir. 1989).  Villegas filed her petition 16 days after first obtaining the order she seeks to challenge.  Her petition is therefore timely, and we proceed to consider its merits.

III.

Villegas makes several factual and legal challenges to her reinstatement order.  Our scope of review is limited.  "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]"  8 U.S.C. § 1252(b)(4)(B).  Legal questions we review de novo.  *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

According to the reinstatement scheme described by 8 C.F.R. § 241.8(a), an alien who illegally re-enters the United States after having been removed or having departed voluntarily shall be removed by reinstatement of the prior order.  In such cases, the alien

"has no right to a hearing before an immigration judge[.]" *Id.* To find that an alien is subject to removal through reinstatement, the immigration officer must determine: (1) that the alien has been subject to a prior order of removal; (2) that the alien is in fact an alien who was previously removed or who departed voluntarily; and (3) that the alien unlawfully re-entered the United States. *Id.* at (1)-(3). In addition, "[t]he immigration officer must obtain the prior order of exclusion, deportation, or removal relating to the alien." *Id.* § 241.8(a)(1).

Villegas argues that insufficient evidence supports DHS's conclusion that she was "subject to a prior order of removal." *Id.* In her recollection, she departed the United States voluntarily in 1996, without entry of an actual order excluding her.

The record here shows otherwise. The government has introduced a document dated March 11, 1996—which was the date of Villegas's hearing—and entitled "Order of the Immigration Judge[.]" The document has a checkmark next to "Applicant has been ordered excluded and deported from the United States[,]" and is signed by the IJ. Villegas argues that this document is not itself the order of removal, because it also states: "This is a summary of the oral decision entered on Mar 11, 1996. This memorandum is solely for the convenience of the parties. If the proceedings should be appealed or reopened, the oral decision will become the official opinion in this case." But the document is both styled as an "Order" and recites that "the oral decision will *become* the official opinion" in the matter "*[i]f* the proceedings should be appealed"—thus implying that the document was then the actual order, and has remained so since there was no appeal. Under these circumstances, we think this document should be treated as the prior order of removal.

The government also introduced two other documents that confirm the existence of a prior order. One is entitled "Notice to Alien Ordered Excluded by Immigration Judge[,]" and was signed by Villegas on March 11, 1996. It informs Villegas, in both English and Spanish, that an "immigration judge has ordered that you be excluded from admission into the United States[,]" and warns her of the consequences of re-entering. The other is a document signed by Villegas on March 3, 1996—the date she first

attempted to enter the United States—in which she says she is "willing to accept an exclusion and deportation order" and does not "want to fight [her] exclusion case[.]" These three documents afford ample grounds for a reasonable adjudicator to conclude that Villegas was, in fact, ordered excluded. We therefore reject her sufficiency argument.

Villegas next argues that her reinstatement order is invalid because DHS failed to comply with its own regulations before entering it. In particular, she argues that DHS did not allow her to make a statement contesting the reinstatement determination. *See* 8 C.F.R. § 241.8(b). The government concedes this violation, but argues that Villegas was not prejudiced by it. We agree. The documents described above demonstrate that Villegas was ordered excluded, which is the only criterion for reinstatement that she disputes. And because she does not dispute that the other criteria were met, her inability to make a statement could not have affected the agency's decision. So we cannot provide relief on this ground either. *See Connor v. U.S. Civil Service Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983) ("[A]n agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses").

Villegas's next argument fails for the same reason. She contends that the procedures employed to reinstate her exclusion order violated due process. Specifically, she asserts that she should have been given an opportunity to review her DHS file and respond to inaccuracies in it, that she was denied the right to counsel, that the DHS official authorizing the reinstatement was biased, and that she was unable to create a record for judicial review. But this claim too requires a showing of prejudice. *See Warner*, 381 F.3d at 539. And for the reasons already stated, Villegas cannot make that showing.

Similarly, Villegas seeks to challenge her underlying 1996 removal order by arguing that the procedures employed to enter it violated due process. In many cases, that challenge is barred by statute. Once DHS makes the findings necessary for reinstatement, "the prior order of removal is reinstated from its original date and is not

subject to being reopened or reviewed[.]" 8 U.S.C. § 1231(a)(5). Villegas tries to sidestep this limitation by pointing to the REAL ID Act's jurisdictional provision, which generally preserves judicial review of "constitutional claims or questions of law raised upon a petition for review[.]" 8 U.S.C. § 1252(a)(2)(D). In an unpublished decision in *Tilley v. Chertoff*, 144 F. App'x 536 (6th Cir. 2005) (per curiam), we concluded, without considering the impact of § 1252(a)(2)(D), that we lacked jurisdiction over an underlying removal order where that order had been reinstated. Since that time, the "circuit courts that have considered the interplay between § 1252(a)(2)(D) and § 1231(a)(5) have held that § 1252(a)(2)(D) re-vests the circuit courts with jurisdiction over constitutional claims or questions of law raised in the context of reinstatement proceedings." *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1137 (9th Cir. 2008) (citing *Lorenzo v. Mukasey*, 508 F.3d 1278, 1282 (10th Cir. 2007); *Debeato v. Att'y Gen.*, 505 F.3d 231, 235 (3d Cir. 2007); *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 513-14 (5th Cir. 2006)); *see also Khan v. Holder*, 608 F.3d 325, 328 (7th Cir. 2010) (quoting § 1252(a)(2)(D)); *Lema v. Holder*, 363 F. App'x 88, 90 (2d Cir. 2010) (discussing *Garcia de Rincon*, 539 F.3d at 1137, but holding that the court lacked jurisdiction because petitioner failed to exhaust administrative remedies). We now agree with the *Lorenzo*, *Debeato*, and *Ramirez-Molina* courts, and conclude that § 1252(a)(2)(D) re-vests the circuit courts with jurisdiction over constitutional claims or questions of law raised in the context of reinstatement proceedings.

So we consider the merits of Villegas's claim. She argues that her due-process rights were violated when the IJ failed to tell her that she could seek to withdraw her application for admission to the United States. Under the Board's precedent at the time, however, the IJ almost certainly would have denied the request because Villegas entered the country with fake documents. *See Matter of Gutierrez*, 19 I. & N. Dec. 562 (BIA 1988). That precedent may well have been the reason why the IJ did not present withdrawal as an option to her. In any event, Villegas cannot show any prejudice resulting from the alleged violation, which means the claim fails. *See Warner*, 381 F.3d at 539.

For these reasons, we deny Villegas's petition for review.