RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0023p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

VISION PROCESSING, LLC,

          *Petitioner,*

     *v.*

           No. 11-3702

CHRISTIE GROVES and DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

          *Respondents.*

On Petition for Review of an Order
of the Benefits Review Board,
United States Department of Labor.
No. 09-0780 BAL-A.

Argued: January 24, 2013

Filed: January 30, 2013

Before: SILER, SUTTON and MCKEAGUE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** H. Brett Stonecipher, FOGLE KELLER PURDY PLLC, Lexington, Kentucky, for Petitioner. Rita A. Roppolo, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents. **ON BRIEF:** H. Brett Stonecipher, FOGLE KELLER PURDY PLLC, Lexington, Kentucky, for Petitioner. Brent Yonts, BRENT YONTS, PSC, Greenville, Kentucky, Sean G. Bajkowski, Rita A. Roppolo, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents.

———————————

## OPINION

———————————

SUTTON, Circuit Judge. Since enacting a program for black-lung benefits in 1969, now known as the Black Lung Benefits Act, Congress has repeatedly tinkered with the claim-filing process, sometimes making it harder for miners and survivors to obtain

benefits, sometimes making it easier.  The question today is whether Congress's most recent adjustment, a part of something called the 2010 Patient Protection and Affordable Care Act, permits Christie Groves, the widow of a long-time coal miner, to bring a claim for survivor benefits under the new, more-relaxed method for obtaining benefits.  The Benefits Review Board concluded that the new law covered this claim, and so do we.

I.

A.

In 1969, when the federal government began providing benefits to coal miners and their dependents, *see* Title IV of the Federal Coal Mine Health and Safety Act of 1969, Pub. L. No. 91-173, 83 Stat. 742, it permitted survivors to obtain benefits in one of two ways.  They could show (1) that the miner's death was due to pneumoconiosis, a chronic lung disease caused by working in coal mines or (2) that the miner was totally disabled by pneumoconiosis at the time of his death, even if the disease played no role in his death.  *See* 30 U.S.C. § 901 (1976).

In 1972, Congress eased the showing required to establish total disability from pneumoconiosis.  It created a presumption that deceased workers who had worked for at least fifteen years in underground coal mines and had developed a totally disabling respiratory or pulmonary impairment were rebuttably presumed to be totally disabled by pneumoconiosis and to have died from it.  30 U.S.C. § 921(c)(4) (1976).

In 1977, Congress eased the showing required to obtain survivor benefits.  It offered automatic benefits to any survivor of a miner who had been awarded benefits on a claim filed during his lifetime.  *See* Black Lung Benefits Reform Act of 1977, Pub. L. No. 95-239, § 7(h), 92 Stat. 95, 100 (1978).

In 1981, Congress changed course.  It eliminated automatic benefits for survivors of miners who had been totally disabled by pneumoconiosis.  *See* Black Lung Benefits Revenue Act of 1981, Pub. L. No. 97-119, §§ 203(a)(1), 203(a)(6), 95 Stat. 1635, 1643–44.  Congress did so by adding the following italicized limiting clause to the existing provision:

> In no case shall the eligible survivors of a miner who was determined to be eligible to receive benefits under this subchapter at the time of his or her death be required to file a new claim for benefits, or refile or otherwise revalidate the claim of such miner, *except with respect to a claim filed under this part on or after the effective date of the Black Lung Benefits Amendments of 1981.*

30 U.S.C. § 932(*l*) (1982).   After 1981, only survivors who could prove that pneumoconiosis had caused the miner's death were eligible; the provision for automatic (or derivative) benefits was eliminated.   *Id.* § 203(a)(4), 95 Stat. at 1644.   The same legislation also eliminated the fifteen-year presumption.   *Id.* § 202(b)(1)(2), 95 Stat. at 1643.

In 2010, as part of the Patient Protection and Affordable Care Act, Congress reversed course again.   Section 1556 of the Act reinstated the fifteen-year presumption and automatic survivor benefits.   Pub. L. No. 111-148, § 1556(a)–(b) (2010).   The 2010 amendments "apply with respect to claims filed . . . after January 1, 2005, that are pending on or after the date of enactment of this Act."   *Id.* § 1556(c), 124 Stat. at 260.

## B.

Earl Groves worked in the Kentucky coal mines for twenty-nine years.   In December 2005, he suffered a work-ending injury:   a collapsed lung.   Groves filed a claim for black-lung benefits on March 3, 2006, and Vision Processing contested the claim.   Four months later, in July 2006, Mr. Groves died of a heart attack and chronic obstructive pulmonary disease.   Mr. Groves' widow, Christie Groves, filed a claim for survivor benefits on August 1, 2006.   Vision Processing contested the claim.

An administrative law judge granted Mrs. Groves' claim for lost living-miner benefits.   But the ALJ denied her claim for survivor benefits on the ground that Mrs. Groves had not submitted sufficient proof to support a finding that her husband had died from pneumoconiosis.

Mrs. Groves appealed the survivor-benefits ruling against her, but the company did not appeal the living-benefits ruling against it.   While the appeal was pending,

Congress enacted the Patient Protection and Affordable Care Act, which included the just-mentioned changes to the black-lung benefits program.  The Benefits Review Board allowed supplemental briefing on the amendment's effect on Mrs. Groves' claim, after which it reversed the ALJ's decision and awarded survivor benefits.

II.

The first question presented is easy to describe:  Do the 1981 or the 2010 rules for handling survivor-benefit claims apply to Mrs. Groves' request for survivor benefits?  If the 1981 rules apply, Mrs. Groves has not submitted sufficient proof to support a finding that her husband died from pneumoconiosis, as the ALJ concluded and as Mrs. Groves has not disputed on appeal.  If the 2010 rules apply, she is spared this burden and qualifies for automatic benefits, as the ALJ  determined that her husband was eligible for living-miner benefits at the time of his death and as the company did not appeal that decision.  Vision Processing takes the position that the new rules apply only to claims filed by miners; Mrs. Groves takes the position that the new rules apply to claims filed by miners or survivors.

The answer to this question takes a little more effort.  Here is what the language of the 2010 amendments says:

> SEC. 1556.  EQUITY FOR CERTAIN ELIGIBLE SURVIVORS:
>
> (a) REBUTTABLE PRESUMPTION.—Section 411(c)(4) of the Black Lung Benefits Act (30 U.S.C. 921(c)(4)) is amended by striking the last sentence.
>
> (b) CONTINUATION OF BENEFITS.—Section 422(*l*) of the Black Lung Benefits Act (30 U.S.C. 932(*l*)) is amended by striking ", except with respect to a claim filed under this part on or after the effective date of the Black Lung Benefits Amendments of 1981".
>
> (c) EFFECTIVE DATE.—The amendments made by this section shall apply with respect to *claims* filed under part B or part C of the Black Lung Benefits Act (30 U.S.C. 921 *et seq*., 931 *et seq*.) after January 1, 2005, that are pending on or after the date of enactment of this Act.

Pub. L. No. 111-148, § 1556 (2010) (emphasis added).

These words may not make anyone's Top Ten list for reader-friendly English, but they are painfully clear, at least when the referenced provisions are described and put in context. The point of § 1556(a) is to reinstate the fifteen-year rebuttable presumption by striking language from 30 U.S.C. § 921(c)(4), which had said, "The provisions of this paragraph shall not apply with respect to claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981." The point of § 1556(b) is to reinstate the right to automatic survivor benefits once found in § 932(*l*) and now found there again with the deletion of the "except" clause. And the point of § 1556(c) is to provide an effective date for § 1556(a) and § 1556(b).

Language and context show that the 2010 amendments apply to all survivor-benefit and all miner-benefit claims filed after January 1, 2005, and pending on March 23, 2010, which includes Mrs. Groves' survivor-benefit claim filed on August 1, 2006. *First,* § 1556(c) says that "[t]he amendments" apply to "*claims* filed . . . after January 1, 2005, that are pending on or after the date of enactment of this Act." (Emphasis added.) By using the word "claims" in § 1556(c), Congress signaled that the new rules apply to *all* claims filed after January 1, 2005, so long as they were pending on the date the Act became law (March 23, 2010), whether they were miner claims or survivor claims. There is no qualifying language limiting § 1556 to miner claims. And the relevant legislation and regulations permit both—miners and survivors—to file "claims." *See, e.g.*, 30 U.S.C. § 931(a); *see also* 20 C.F.R. §§ 718.204(a), 718.205(a). All agree that Mrs. Groves filed her survivor-benefit claim after January 1, 2005—on August 1, 2006—and that it remains pending today, after the passage of the 2010 law.

*Second*, this reading respects the interpretive norm that "identical terms within an Act bear the same meaning." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992). Section 1556(c) provides one effective date, both for the revival of the fifteen-year presumption in § 1556(a) and for the revival of the right to automatic survival benefits in § 1556(b). That is significant because the revival of the fifteen-year presumption necessarily applies to claims by miners *and* survivors:

> [I]f a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection *with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim* under this subchapter. . . , then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis.

30 U.S.C. § 921(c)(4) (Supp. IV 2010) (emphasis added). By its terms, the fifteen-year presumption thus applies to all claims, whether miner or survivor claims. It makes little sense to treat the "claims" referred to in § 1556(c) as having one meaning (miner and survivor claims) when referring to § 1556(a) and as having another meaning (miner claims) when referring to § 1556(b). Far better, and far more consistent with the basic ground rules of interpretation, it seems to us, to give the same word the same meaning throughout § 1556(c).

*Third*, at other places in the statute, Congress distinguished claims filed by some people as opposed to others when it wished to do so. While the legislation generally allows miners and survivors to file a "claim," 30 U.S.C. § 931(a), Congress distinguished rules for claims filed "by a miner" and those filed by someone else in other places in the Black Lung Benefits Act. *See, e.g.*, 30 U.S.C. §§ 921(c)(4) (enacting a rebuttable presumption for a "miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim"); 932(f) ("Any claim for benefits *by a miner* under this section shall be filed within three years . . . .") (emphasis added); 932(*l*) ("In no case *shall the eligible survivors of a miner* who was determined to be eligible to receive benefits under this subchapter at the time of his or her death be required to file a new claim for benefits, or refile or otherwise revalidate the claim *of such miner*.") (emphases added). In some places, Congress treated these different claims differently, and in other places it did not. We must respect its choice.

This reading parallels the Director's interpretation of the statute, as offered in a brief filed in this case and in several others. Even if we assume for the sake of argument that this method of delivering the Director's interpretation of the law entitles it only to

*Skidmore* deference, we would agree that this position, thanks to the language of the statute, has considerable "power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). The only other circuit to answer the statutory-interpretation question directly came out the same way. *See W. Va. CWP Fund v. Stacy*, 671 F.3d 378, 389 (4th Cir. 2011) (reasoning that the word "claims" must "mean the same thing—*all* claims—throughout Section 1556" and calling the alternative reading "tortured").

Vision Processing's main objection is that, because Congress amended § 1556(b) to eliminate the need to file survivor claims, the courts should not read "claims" in § 1556(c) to cover survivor claims. But this argument misreads the amendment. Section 1556(b) eliminates the *requirement* that survivors file a claim before obtaining benefits; it does not *prohibit* such claims. *See Stacy*, 671 F.3d at 388–89. Even after the amendment, survivors need to notify their spouses' employers to trigger § 1556(b) and to obtain survivor benefits. But even if that were not the case, even if survivors in the ordinary course did not file "claims" after passage of the Act, they were *required* to do so before 2010. If we adopted Vision Processing's reading of § 1556(c), that would exclude all of the *mandatory* survivor claims that were filed between 2005 and 2010, all in an amendment given the title "Equity for Certain Eligible Survivors" and all without regard to the reality that the whole point of the effective-date provision, as measured by the four corners of its text, was to apply the new rules to previously filed and still-pending claims.

### III.

Vision Processing separately argues that the application of § 1556(c) to Mrs. Groves' claim would violate several constitutional guarantees. We are not persuaded.

*Due process.* The company contends that this reading violates due process because it requires the payment of benefits without a "meaningful hearing." Vision Processing Brief at 31. But Vision Processing *had* a hearing. In response to Mr. Groves' living-miner claim, the employer submitted its own medical evidence, cross-examined Mr. Groves' witnesses and presented its arguments in briefs and at a formal hearing. The ALJ then granted benefits to Mr. Groves. At no point did the company

contend that this hearing was insufficient. What the company did not get was an appeal. But that was its own doing. The company opted not to appeal because the award covered just four months of benefits.

What the company understandably regrets is that Congress later amended the statute to permit automatic survivor benefits if a miner was receiving benefits at the time of his death. That development, however, falls into the category of bad luck, a category that includes some companies and some miners (and survivors). Just as some companies now may wish they had challenged living-miner benefits rulings between 2005 and 2010, some survivors may wish their spouses had continued to appeal (or they had continued to appeal) unsuccessful living-miner claims between 2005 and 2010. No less significantly, some miners and survivors may wish Congress had created an earlier effective date, say in 2003 or 2004, and many companies may be relieved Congress did not. The Due Process Clause does not bar retroactive civil legislation of this sort, so long as Congress makes its intentions clear, so long as it draws rational classifications and so long as it does not violate another constitutional guarantee. *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17–20 (1976) (permitting Congress to give retroactive effect to the Black Lung Benefits Act); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 257, 267–68 (1994).

*Peabody Coal Co. v. Greer*, 62 F.3d 801 (6th Cir. 1995), and *Cal-Glo Coal Co. v. Yeager*, 104 F.3d 827 (6th Cir. 1997), offer nothing to the contrary. In those cases, after the ALJ's decision but before the Board's consideration of the case on appeal, our court issued a decision that heightened the rebuttal standard an employer needed to satisfy to overcome a presumption of pneumoconiosis. *See York v. Benefits Review Bd.*, 819 F.2d 134 (6th Cir. 1987). In each case, the Board vacated the ALJ's decision and remanded for reconsideration under the new standard, and the ALJs found in favor of the claimants, citing insufficient evidence on the part of the employers. *See Peabody*, 62 F.3d at 803–04; *Cal-Glo Coal Co.*, 104 F.3d at 829–30. In both cases, we held that the employers must be given an opportunity to submit additional evidence to satisfy the new standard. *See Peabody*, 62 F.3d at 806; *Cal-Glo Coal Co.*, 104 F.3d at 832. No

such problem occurred here. Congress made certain benefits awards automatic in 2010; it did not heighten an employer's burden of proof. No amount of evidence from Vision Processing or for that matter any hearing could have changed the reality that Mrs. Groves was entitled to survivor benefits because her husband had been awarded living-miner benefits. *See* 30 U.S.C. § 932(*l*).

What the company wants is to reopen the appeal of the living-miner benefits claim. But the legislation offers no handhold for doing so, and due process does not demand it. Nor is it clear that Congress would have the authority to reopen such appeals even had it wished to do so. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 225–28 (1995) (invalidating § 27A(b) of the Securities Exchange Act of 1934 as a violation of separation of powers, to the extent the statute required federal courts to reopen final judgments in private civil actions, and holding that Congress may not deprive judicial judgments of conclusive effect).

*Taking*. Vision Processing also submits that the retroactive alteration of the proof needed to pay survivor benefits amounts to an unconstitutional taking under the Fifth Amendment. Generally speaking, a government's demand that one private party compensate another for injuries incurred during his employment, even when the requirement turns on employment events that occurred before the legislation went into effect, does not amount to a compensable taking. *See Eastern Enters. v. Apfel*, 524 U.S. 498 (1998). Even the plurality opinion in *Eastern Enterprises*, which offers the most support for the company's claim, would not apply in this setting. What troubled the plurality was that the legislation "single[d] out [Eastern] to bear a burden . . . unrelated to any commitment that [it] made or to any injury [it] caused." 524 U.S. at 537 (O'Connor, J.) (plurality opinion). No such problem occurred here. Section 1556 asks employers to compensate employees and their families for disabilities the employees incurred while on the job *for this employer*. Section 1556 "does not implicate the fundamental principles of fairness on which the *Eastern* plurality based its conclusion." *Stacy*, 671 F.3d at 387; *see also B&G Constr. Co. v. Dir., OWCP*, 662 F.3d 233, 262 (3d Cir. 2011); *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 223 (1986) (noting

that, although *Usery* did not analyze the Black Lung Benefits Act under the Takings Clause, "it would be surprising indeed to discover now that . . . Congress unconstitutionally had taken the assets of the employers" faced with liability under the statute). All that the legislation does is alter the methods of proof for miner and survivor claims, something Congress has done periodically for the last forty-four years, and something that has favored companies on some occasions and miners on others.

*Substantive due process.*   Vision Processing adds that allowing the 2010 amendments to operate retroactively would violate substantive due process. The Supreme Court has rejected a similar argument before—in the context of the Black Lung Benefits Act no less. *Usery* considered whether the Act, as originally enacted, violated due process because it imposed retroactive liability on coal mine operators. 428 U.S. at 19–20. In upholding the statute, the Court explained that "the imposition of liability for the effects of disabilities bred in the past is justified as a rational measure to spread the costs of the employees' disabilities to those who have profited from the fruits of their labor—the operators and the coal consumers." *Id.* at 18; *see also Stacy*, 671 F.3d at 383; *B&G Constr. Co.*, 662 F.3d at 256–57; *Keene v. Consol. Coal Co.*, 645 F.3d 844, 849 (7th Cir. 2011). The same is true in this case.

Vision Processing points out that Congress offered no "purpose for the retroactive period's start date of January 1, 2005," an omission that ostensibly proves Congress acted arbitrarily. Vision Processing Brief at 37. But once Congress opted to make the legislation retroactive, as it was permitted to do, it had to pick *some* earlier date, and the Constitution gives the National Legislature wide policy discretion in drawing the line at one point in time over another. Congress's decision to pick such a date in truth cuts *against* a finding of arbitrariness. Instead of granting automatic survivor benefits for all claims filed at any point in time, Congress opted for a measured approach, one that accounted for the interests of both companies and workers by imposing a financial burden only for claims filed in or after 2005.

IV.

There is one other issue, one distinct from the matters of statutory and constitutional interpretation implicated by the 2010 alteration of the methods of proof for survivor claims. Section 1556(b), which struck the limitation on automatic survivor benefits previously found in § 932(*l*), failed to make corresponding changes to §§ 901, 921(a) or 922(a)(2). As scrivener's misfortune would have it, these other provisions still contain language from the 1981 amendments, and the company now invokes this language as a basis for blocking Mrs. Groves' claim, claiming the new language is irreconcilable with the old.

In tension, yes. Irreconcilable, no. Section 932(c), a neighboring provision to § 932(*l*), is captioned "Persons entitled to benefits" and states that, "Benefits shall be paid . . . to the categories of persons entitled to benefits under section 922(a) of this title." 30 U.S.C. § 932(c). And § 922(a)(2) still contains the 1981 language that the 2010 amendments removed from § 932(*l*):

> In the case of death of a miner due to pneumoconiosis or, *except with respect to a claim filed under part C of this subchapter on or after the effective date of the Black Lung Benefits Amendments of 1981*, of a miner receiving benefits under this part, benefits shall be paid to his widow (if any) at the rate the deceased miner would receive such benefits if he were totally disabled.

*Id.* § 922(a)(2) (emphasis added). Whereas § 932(*l*) now says that a survivor need not file a new claim for benefits if the miner was receiving benefits when he died in order to receive survivor benefits, § 922(a)(2) still says that survivor benefits go to the survivors of miners who died due to pneumoconiosis. Sections § 921(a) and § 901 pose the same problem, as they too still say survivors benefits will be paid if the miner's death was due to pneumoconiosis.

But this does not make the provisions irreconcilable. The key specific provision that needed to be changed, § 932(*l*), was changed. *See Morton v. Mancari*, 417 U.S. 535, 550–51 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one."). While Congress would have been wise

to make corresponding changes to the other more general provisions, the omission does not create irreconcilability but merely leaves in place additional language that serves no useful purpose (except as a reminder of the old rules).  The fact remains that survivor benefits are paid to the survivors of miners who die due to pneumoconiosis, and the post-2010 amendments simply resurrect a former method for making this showing.  Our job is to reconcile provisions when a fair reading permits, and that is just so here.  *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("A court must therefore interpret the statute 'as a symmetrical and coherent regulatory scheme,' and 'fit, if possible, all parts into an harmonious whole.'") (citations omitted).

But even if this were not the case, even if honoring the new provision necessarily demeaned the others, that still would not offer the company any refuge.  When Congress creates opposing mandates, there has to be a tiebreaker to unravel the conflict—to leave one requirement standing and to repeal the opposing requirement by implication.  As the most recent act of Congress, the change to § 932(*l*) governs.  "Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one."  *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936); *see also Branch v. Smith*, 538 U.S. 254, 273 (2003) (explaining that, although "repeals by implication are not favored," an "implied repeal" will be found where provisions in two statutes are in "irreconcilable conflict"); *Stacy*, 671 F.3d at 391 (holding that § 932(*l*) controls); *B&G Constr.*, 662 F.3d at 252–53 (same).

## V.

For these reasons, we affirm the decision of the Board awarding Mrs. Groves survivor benefits.