NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0201n.06

No. 14-3519

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>SEXTET MINING CORPORATION,</td><td>)</td><td rowspan="11"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Petitioner,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>MARY WHITFIELD and DIRECTOR, OFFICE OF</td><td>)</td></tr>
<tr><td>WORKERS' COMPENSATION PROGRAMS,</td><td>)</td></tr>
<tr><td>UNITED STATES DEPARTMENT OF LABOR,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Respondents.</td><td>)</td></tr>
</table>

**FILED**
Mar 12, 2015
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW FROM THE BENEFITS REVIEW BOARD OF THE UNITED STATES DEPARTMENT OF LABOR

Before: KETHLEDGE and DONALD, Circuit Judges; McCALLA, District Judge.[*]

KETHLEDGE, Circuit Judge. Sextet Mining Corporation petitions for review of an administrative order requiring the company to pay benefits to a deceased coal miner's widow. Sextet primarily argues that the agency violated one of its own rules when it entered a proposed order without prior notice to Sextet. We deny the petition.

I.

A.

A coal miner who is totally disabled due to pneumoconiosis, *i.e.*, black-lung disease, may claim federal benefits. 30 U.S.C. § 901. If a miner dies either from pneumoconiosis or,

---

[*] The Honorable Jon Phipps McCalla, Senior United States District Judge for the Western District of Tennessee, sitting by designation.

regardless of the cause, while receiving benefits, his dependents may also claim survivor's benefits. 30 U.S.C. §§ 901, 932(*l*).

When a miner or survivor files a claim, a district director in the Office of Workers' Compensation Programs reviews the claim to determine both the claimant's eligibility for benefits and who should pay them. 20 C.F.R. §§ 725.303(a), 725.350(a)-(b), 725.351(a), 725.401. To determine who should pay a claim—the Black Lung Disability Trust Fund or the mining operator that employed the miner—the director typically sends a notice to every operator that might be liable. § 725.407(b). The notice gives the operator 30 days to contest its liability and 90 days to submit documentary evidence. § 725.408. If an operator submits evidence, the director reviews that evidence, and then issues a schedule containing his initial determination of the operator's liability and providing at least 60 days to submit additional evidence. § 725.410(a), (b).

Next, the director issues a proposed decision and order, which determines benefits and liability based on the available evidence. § 725.418(a). A proposed decision must include, among other things, the "director's final designation" of the operator responsible for paying benefits. § 725.418(d). If that operator disagrees with the director's designation, the operator may request a revision of the proposed order or a hearing before an administrative-law judge ("ALJ"). § 725.419(a), (c).

If the operator requests a hearing, an ALJ determines the claimant's eligibility and the operator's liability without considering the director's prior findings and determinations. §§ 725.455(a); 725.476. To aid the ALJ, the operator may submit briefs and additional evidence. § 725.455(b), (d). But an oral hearing is not required: the ALJ may resolve a claim based on the paper record after giving the operator notice and at least 30 days to respond. § 725.455(d). An

operator may appeal the ALJ's decision to the Benefits Review Board and, ultimately, to a federal circuit court. §§ 725.481, 725.482(a).

B.

In 2008, an ALJ ordered Sextet to pay black-lung benefits to a longtime coal miner, Needham Whitfield, who was totally disabled due to pneumoconiosis. Sextet paid the benefits for four years—until Needham died of renal failure in August 2012. Needham's widow, Mary Whitfield, then filed a claim for survivor's benefits.

The district director did not conduct a typical review of her claim; rather, in September 2012, the director expedited the process by issuing a proposed decision and order, without first notifying Sextet of the claim or allowing Sextet to submit evidence. In the proposed decision, the director said that 30 U.S.C. § 932(*l*) automatically entitled Whitfield to survivor's benefits because her husband had been receiving black-lung benefits when he died. The director mailed the proposed decision to Sextet, explaining that it had 30 days to contest the decision or to submit evidence. Sextet did not respond.

In October 2012, the director issued another order stating that its earlier proposed decision was now final. The agency mailed that order both to Sextet and—unlike the first order—to an attorney that had represented Sextet in past cases. This time, Sextet responded. It said that the agency had not served the proposed decision on Sextet's counsel of record, that Sextet objected to the director's liability determination, and that Sextet wanted a hearing. The director transferred the claim to an ALJ.

In April 2013, the ALJ ordered Sextet to show cause why benefits should not be awarded without a hearing. Sextet responded that the director's expedited review had violated due process. Sextet also requested a stay while another company sought further review of a Sixth

Circuit decision that interpreted § 932(*l*). *See Vision Processing, LLC v. Groves*, 705 F.3d 551 (6th Cir. 2013). The ALJ decided that a hearing was unnecessary, explaining that Sextet did not dispute that Whitfield was an eligible survivor and was therefore automatically entitled to benefits under § 932(*l*). For these same reasons, the ALJ also ruled that Sextet was liable.

Sextet appealed, but the Board affirmed. The Board observed that Sextet did "not dispute its designation as the responsible operator liable for the payment of any benefits owed to [Whitfield,]" and the Board rejected various procedural challenges to the ALJ's decision. The Board also agreed with the ALJ that § 932(*l*) automatically entitled Whitfield to survivor's benefits, regardless of her husband's cause of death.

This petition for review followed.

## II.

Sextet argues that § 932(*l*) does not automatically confer survivor's benefits on the widow of a miner who dies while receiving black-lung benefits. We rejected that argument in *Vision Processing*, 705 F.3d 551, which binds us here. *See Grundy Mining Co. v. Flynn*, 353 F.3d 467, 479 (6th Cir. 2003). So we reject it again here.

Sextet's principal argument is that the adjudicative process violated 20 C.F.R. § 725.418(d). At the time of the proposed decision in favor of Whitfield, § 725.418(d) provided in relevant part:

> The proposed decision and order must reflect the district director's final designation of the responsible operator liable for the payment of benefits. No operator may be finally designated as the responsible operator unless it has received notification of its potential liability pursuant to § 725.407, and the opportunity to submit additional evidence pursuant to § 725.410.

20 C.F.R. § 725.418 (2012).

Sextet argues that the district director violated § 725.418(d) when the director issued the proposed decision without first notifying Sextet that it might have to pay Whitfield's claim (under § 725.407) or giving Sextet at least 60 days to present its evidence (under § 725.410). To obtain relief, Sextet must also show that it was "prejudiced on the merits or deprived of substantial rights[.]" *Connor v. U.S. Civil Service Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983).

Sextet's complaint is that it was denied an opportunity to present its evidence and legal arguments. But Sextet received two chances to do precisely that: first, when the director invited Sextet to request a revision of the proposed decision; and second, when the ALJ issued a show-cause order asking whether the ALJ should find Sextet liable. But Sextet chose not to contest the director's determination that Sextet was the operator responsible for any benefit payments made to Whitfield. Nor did Sextet dispute her eligibility for survivor's benefits. Instead, Sextet challenged the legal rule conferring those benefits—which by then we had upheld in a published decision. *See Vision Processing*, 705 F.3d 551. Thus, on the record here, the putative procedural violation made no difference to the ultimate outcome—which means it was harmless.

Sextet responds that an agency's disregard of a rule granting a party a procedural right—such as the right to submit evidence—is always prejudicial. But we reached the opposite conclusion in *Villegas de la Paz v. Holder*, 640 F.3d 650 (6th Cir. 2010). There, the Department of Homeland Security failed to give an alien the opportunity to contest the reinstatement of a removal order, in violation of the Department's own regulations. *Id.* at 656. But the alien disputed only a single premise underlying the removal order, and the record otherwise showed that her position was incorrect. *Id.* We therefore held that the error was harmless, explaining that the alien's "inability to make a statement could not have affected the agency's decision." *Id.* That same reasoning applies here.

The petition for review is denied.