[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14468
_____

D.C. Docket No. BRB-0 : 10–0675 BLA

U.S. STEEL MINING COMPANY, LLC,

Petitioner,

versus

DIRECTOR, OWCP,
KATHY STARKS,
Widow of Eligah Starks (Deceased),

Respondents.

_____

Petition for Review of a Decision of the
Benefits Review Board
_____

(June 27, 2013)

Before WILSON and COX, Circuit Judges, and VOORHEES,[*] District Judge.

COX, Circuit Judge:

_____

[*] Honorable Richard Voorhees, United States District Judge for the Western District of North Carolina, sitting by designation.

Federal law establishes a program that provides benefits to miners who suffer from pneumoconiosis, a respiratory illness colloquially known as black lung disease. The program also allows certain surviving relatives of a miner to claim benefits after the miner's death. Until 2010, a survivor was required to show that the miner died due to pneumoconiosis before the survivor could receive statutory benefits. But since the Patient Protection and Affordable Care Act amended 30 U.S.C. § 932(*l*), a provision of the black lung benefits program, circuits have debated whether survivors are still required to establish what caused the miner's death.

This question now arrives on our doorstep. Kathy Starks, the widow of deceased miner Eligah Starks, won a benefits award in 2010 from U.S. Steel Mining Company, Eligah's former employer, without showing that Eligah died due to pneumoconiosis. When U.S. Steel appealed, the Department of Labor's Benefits Review Board affirmed, holding that Kathy did not need to show the cause of Eligah's death. The Board also rejected U.S. Steel's arguments that Kathy's claim did not fall within the retroactive date of the § 932(*l*) amendment and that, even if it did, the retroactive application of the amendment violates due process. U.S. Steel now petitions this court for review. We agree with the Board and deny the petition.

2

## I.  FACTS AND PROCEDURAL HISTORY

Congress has developed piecemeal the statutory program for providing benefits to miners afflicted with pneumoconiosis and to the families of those miners.  Recurring issues in the continual revisions include the showing that a miner's family members—including his or her spouse—must make and the procedure they must follow to receive statutory benefits after the miner's death.  These issues are at the heart of U.S. Steel's petition and require a discussion of the benefits scheme's development.

### A.  The Black Lung Benefits Provisions

The current benefits regime began in 1970 when Congress enacted the Federal Coal Mine Health and Safety Act of 1969.  Pub. L. No. 91-173, 83 Stat. 742.  A professed purpose of the original legislation, at least with regard to miners' survivors, was "to provide benefits . . . to the surviving dependents of miners whose death was due to" pneumoconiosis.  *Id.* § 401, 83 Stat. at 792 (codified as amended at 30 U.S.C. § 901(a)).  The legislation directed the Secretary of Labor to "make payments of benefits in respect of . . . the death of any miner whose death was due to pneumoconiosis," *id.* § 411(a), 83 Stat. at 793 (codified as amended at 30 U.S.C. § 921(a)), and it instructed benefits to be paid to a miner's widow "[i]n the case of death of a miner due to pneumoconiosis or of a miner receiving benefits under this part," *id.* § 412(a)(2), 83 Stat. at 794 (codified as amended at 30 U.S.C.

3

§ 922(a)(2)).  The legislation provided that the federal government would pay the benefits until 1973, at which time state workers' compensation programs would take over the payments or the miners' former employers would be liable for them. *Id.* § 422(a), 83 Stat. at 796 (codified as amended at 30 U.S.C. § 932(a)).  If the former employer was to pay, the legislation directed that employer to pay benefits to the persons listed in 30 U.S.C. § 922(a).  *Id.* § 422(c), 83 Stat. at 796 (codified as amended at 30 U.S.C. § 932(c)).

One problem that arose in the initial years of the program was that many surviving spouses could not gather evidence to prove that their miner spouses died due to pneumoconiosis, a condition of the 1970 legislation.  *See* John S. Lopatto, III, *The Federal Black Lung Program: A 1983 Primer*, 85 W. Va. L. Rev. 677, 684 (1982–1983).  In 1972, Congress added language to allow surviving spouses to obtain benefits with an alternative showing.  In the Black Lung Benefits Act of 1972, Congress amended 30 U.S.C. § 901—the declaration of purpose—so that a purpose of the benefits provisions was to provide benefits "to the surviving dependents of miners whose death was due to [pneumoconiosis] *or who were totally disabled by this disease at the time of their deaths*."  Pub. L. No. 92-303, § 4(b), 86 Stat. 150, 153–54 (codified as amended at 30 U.S.C. § 901) (emphasis added).  Congress also amended § 921(a) to direct the Secretary to pay benefits "in respect of the death of any miner whose death was due to pneumoconiosis

4

*or . . . who at the time of his death was totally disabled by pneumoconiosis.*" *Id.* (codified as amended at 30 U.S.C. § 921(a)) (emphasis added). After the 1972 Act, then, surviving spouses could obtain benefits either by showing that the miner died due to pneumoconiosis or that the miner had been totally disabled by the disease when he or she died.

Congress again amended the provisions in 1978. Two amendments are relevant to this case. First, Congress expanded the list of survivors entitled to seek benefits to include children, parents, and siblings. Black Lung Benefits Reform Act of 1977, Pub. L. 95-239, § 3(b)(1), 92 Stat. 95, 96 (1978) (codified as amended at 30 U.S.C. § 922(a)(3), (5)). Second—and most importantly for this case— Congress added a provision that eliminated the need to file a claim for survivors whose associated miner had been awarded benefits under the benefits scheme by the time the miner died. The new provision, codified at 30 U.S.C. § 932(*l*) under the heading "Filing of new claims or refiling or revalidation of claims of miners already determined eligible at the time of death," read:

> In no case shall the eligible survivors of a miner who was determined to be eligible to receive benefits under this title at the time of his or her death be required to file a new claim for benefits, or refile or otherwise revalidate the claim of such miner.

*Id.* § 7(h), 92 Stat. at 100 (codified as amended at 30 U.S.C. § 932(*l*)). Under this provision, the "eligible survivors" of miners who had already been awarded benefits did not need to file a claim to continue receiving those benefits after the

5

miner's death.  *See* H.R. Rep. 95-864, at 19 (1978); *Smith v. Camco Mining Inc.*, 13 Black Lung Rep. (Westlaw) 1-17, *3 (Ben. Rev. Bd. 1989).

In 1981, Congress changed course.  The Black Lung Benefits Act of 1981 amended the benefits provisions to once again require survivors to file claims and show that their associated miners died due to pneumoconiosis.  Specifically, the 1981 Act made changes to four sections relevant to this discussion.  First, the 1981 Act amended § 932(*l*) to cancel its effect for any claim for benefits after the Act's effective date of January 1, 1982.  The amended § 932(*l*) read:

> In no case shall the eligible survivors of a miner who was determined to be eligible to receive benefits under this subchapter at the time of his or her death be required to file a new claim for benefits, or refile or otherwise revalidate the claim of such miner, *except with respect to a claim filed under this part on or after [January 1, 1982]*.

Pub. L. No. 97-119, § 203(a)(6), 95 Stat. 1635, 1644 (codified as amended at 30 U.S.C. § 932(*l*)) (emphasis added).  Second, the Act amended § 901 to strike the language added in 1972, so that the only purpose of the benefits provisions regarding surviving spouses was to "provide benefits . . . to the surviving dependents of miners whose death was due to [pneumoconiosis]."  *Id.* § 203(a)(4), 95 Stat. at 1644 (codified at 30 U.S.C. § 901(a)).  Third, the Act amended § 921(a) so that the Secretary was directed to pay benefits "in respect of the death of any miner whose death was due to pneumoconiosis or, *except with respect to a claim filed . . . on or after [January 1, 1982]*, who at the time of his death was totally

6

disabled by pneumoconiosis." *Id.* § 203(a)(5), 95 Stat. at 1643 (codified at 30 U.S.C. § 921(a)) (emphasis added). Fourth, the Act amended § 922(a) so that benefits payments would go to a miner's widow, child, parents, or siblings "[i]n the case of death of a miner due to pneumoconiosis or, *except with respect to a claim filed . . . on or after [January 1, 1982]*, of a miner receiving benefits under this part." *Id.* § 203(a)(1)–(3), 95 Stat. at 1644 (codified at 30 U.S.C. § 922(a)(2), (3), (5)) (emphasis added). The net effect of these amendments: to obtain benefits after 1981, survivors needed to file claims and show that their associated miners died due to pneumoconiosis. *See Pothering v. Parkson Coal Co.*, 861 F.2d 1321, 1327 (3d Cir. 1988); *Neeley v. Dir., Office of Workers' Comp. Programs*, 11 Black Lung Rep. (Westlaw) 1-85, *1 (Ben. Rev. Bd. 1988).

The provisions went substantially unamended for almost thirty years. And it was under this post-1981 benefits scheme that Kathy Starks filed for benefits following the death of her husband, Eligah.

## B. Kathy Starks's Claim

Eligah Starks worked in a coal mine for forty-four years. In November 1998, he filed a claim for black lung benefits, and an administrative law judge awarded him benefits in May 2000. The benefits were paid by U.S. Steel Mining Company, Eligah's former employer. Eligah died in February 2006, leaving Kathy as his surviving spouse. In April 2006, Kathy filed a claim to receive the benefits

Eligah had been receiving when he died. An administrative law judge denied her benefits in July 2008, concluding that Kathy had "failed to establish, by a preponderance of evidence, that her husband died due to pneumoconiosis." (Dir. Ex. 61 at 20.) Kathy filed a motion for modification of that order in March 2009.

### C. The 2010 Amendment

Kathy's motion for modification was pending on March 23, 2010, the effective date of the Patient Protection and Affordable Care Act, which contained Congress's latest amendment to the benefits regime. Section 1556(b) of the Affordable Care Act restored § 932(*l*) to its original version by striking the canceling language added in 1981. Pub. L. No. 111-148, § 1556(b), 124 Stat. 119, 260 (2010). The amended § 932(*l*) now reads:

> In no case shall the eligible survivors of a miner who was determined to be eligible to receive benefits under this subchapter at the time of his or her death be required to file a new claim for benefits, or refile or otherwise revalidate the claim of such miner[.]

30 U.S.C. § 932(*l*). Under the amended § 932(*l*), an "eligible survivor" is again allowed to obtain benefits without filing a claim if his or her associated miner had been awarded benefits by the time the miner died. Importantly for Kathy, this amendment applied retroactively to "claims filed . . . after January 1, 2005, that [we]re pending on" March 23, 2010. Pub. L. No. 111-148, § 1556(c), 124 Stat. at 260.

8

Shortly after the effective date of the Affordable Care Act, Kathy filed a "Motion for Decision and Order Awarding Benefits Based on Automatic Entitlement." (Admin. R. at 238.) In the motion, Kathy argued that she no longer needed to show that Eligah died due to pneumoconiosis because § 1556(b) eliminated the need for that showing. An administrative law judge granted the motion and awarded Kathy benefits. U.S. Steel appealed to the Department of Labor Benefits Review Board. The Board affirmed the administrative law judge's ruling.

U.S. Steel petitioned this court to review the Board's ruling. We have jurisdiction pursuant to 33 U.S.C. § 921(c).

## II. ISSUES ON APPEAL AND STANDARD OF REVIEW

U.S. Steel contends that there are three errors in the Board's ruling. First, U.S. Steel argues that the Board misinterpreted § 932(*l*) as amended by the Affordable Care Act. Under the correct interpretation, U.S. Steel suggests, Kathy Starks is still required to prove that Eligah died due to pneumoconiosis. Second, U.S. Steel contends that the retroactive date of the Affordable Care Act amendment refers to miners' claims, not surviving spouses' claims. If so, the amendment does not apply to Kathy's claim because Eligah filed his claim before the January 1, 2005, retroactive cutoff. Third, U.S. Steel contends that the

retroactive application of the Affordable Care Act amendment violates the Due Process Clause of the Fifth Amendment.

We review de novo questions of statutory interpretation. *Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 941 (11th Cir. 2001). We also review de novo constitutional challenges to statutes. *United States v. Cunningham*, 607 F.3d 1264, 1266 (11th Cir. 2010) (per curiam).

## III.  DISCUSSION

### A.

We first address U.S. Steel's argument that the Board misinterpreted the amended § 932(*l*) to eliminate a survivor's requirement to prove that the miner spouse died due to pneumoconiosis. Instead, U.S. Steel argues, § 932(*l*) should be read in the context of § 901(a),[1] § 921(a),[2] and § 922(a)[3]—all of which condition

---

[1] In relevant part, § 901(a) currently reads, "It is . . . the purpose of this subchapter to provide benefits . . . to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease."

[2] In relevant part, § 921(a) currently reads:

The Secretary shall, in accordance with the provisions of this part, and the regulations promulgated by him under this part, make payments . . . in respect of the death of any miner whose death was due to pneumoconiosis or, except with respect to a claim filed under part C of this subchapter on or after the effective date of the Black Lung Benefits Amendments of 1981, who at the time of his death was totally disabled by pneumoconiosis.

[3] In relevant part, § 922(a)(2) currently reads:

[B]enefit payments shall be made by the Secretary under this part as follows: . . . [i]n the case of death of a miner due to pneumoconiosis or, except

survivor benefits on a showing that the miner died of pneumoconiosis and none of which were amended by § 1556 of the Affordable Care Act.

We are not the first circuit to address the apparent tension between § 932(*l*) as amended and the sections left unamended. Three other circuits have discussed this issue, and a fledgling circuit split has developed. On one hand, the Third Circuit held that the amended § 932(*l*) removed the need for a surviving spouse to prove what caused the miner's death, and the court inferred the negation of any language to the contrary in other sections. *B & G Constr., Co. v. Dir., Office of Workers' Comp. Programs*, 662 F.3d 233, 248–53 (3d Cir. 2011). The Fourth Circuit agreed. *W. Va. CWP Fund v. Stacy*, 671 F.3d 378, 389–91 (4th Cir. 2011) (discussing the issue in dicta because the proponent waived the argument). On the other hand, the Sixth Circuit concluded (somewhat summarily) that surviving spouses still must prove that the miner died of pneumoconiosis. *Vision Processing, LLC v. Groves*, 705 F.3d 551, 558–59 (6th Cir. 2013) ("The fact remains that survivor benefits are paid to the survivors of miners who die due to pneumoconiosis, and the post-2010 amendments simply resurrect a former method for making this showing.").

---

with respect to a claim filed under Part C of this subchapter on or after the effective date of the Black Lung Benefits Amendments of 1981, of a miner receiving benefits under this part, benefits shall be paid to his widow (if any) at the rate the deceased miner would receive such benefits if he were totally disabled.

In light of the disagreement between these circuits (and because this appeal presents questions of first impression in this circuit), we engage in a fresh statutory construction of § 932(*l*) as amended by the Affordable Care Act.

We begin, as we must, with the text of § 932(*l*) as amended by the Affordable Care Act's § 1556(b).  *See United States v. Gonzales*, 520 U.S. 1, 4, 117 S. Ct. 1032, 1034 (1997) ("Our analysis begins, as always, with the statutory text.").  If the text of § 932(*l*) is unambiguous, we need not inquire further.  *See Rubin v. United States*, 449 U.S. 424, 430, 101 S. Ct. 698, 700 (1981) ("When we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances." (internal quotation marks omitted)); *Mike Smith Pontiac, GMC, Inc. v. Mercedes-Benz of N. Am., Inc.*, 32 F.3d 528, 531 (11th Cir. 1994) ("[W]hen the language of a statute is clear and unambiguous and conveys a clear and definite meaning, the statute must be given its plain and ordinary meaning." (internal quotation marks omitted)).  In testing the statute for ambiguity, we must examine the language of the statute, "the specific context in which that language is used, and the broader context of the statute as a whole."  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S. Ct. 843, 846 (1997).

Almost all of the language of § 932(*l*), as amended, is clear in meaning.  The text provides an exception from the requirement to file a benefits claim—whether a "new claim for benefits" or a refiling or revalidation of a former claim—for any

12

individual who can meet two requirements. One requirement is unambiguous: the miner with whom the individual was associated must have been "determined to be eligible to receive benefits under this subchapter at the time of his or her death." But the meaning of the other requirement—that the individual must be an "eligible survivor"—is not immediately clear. Nothing in § 932(*l*) indicates which survivors are eligible, so we look for the meaning of "eligible survivor" in the broader statutory context. *See Robinson*, 519 U.S. at 341, 117 S. Ct. at 846.

We look first to the other provisions of § 932. Section 932(a) requires, under certain circumstances, an afflicted miner's former employer to provide benefits to the miner. 30 U.S.C. § 932(a). Section 932(c), labeled "Persons entitled to benefits," directs former employers to pay benefits "to the categories of persons entitled to benefits under section 922(a) of this title." *Id.* § 932(c). Section 922(a), then, names a number of classes of beneficiaries, including widows, children, parents, and siblings, who meet certain relationship and dependency definitions and whose associated miner dies "due to pneumoconiosis or, except with respect to a claim filed . . . on or after [January 1, 1982], of a miner receiving benefits under this part." *Id.* § 922(a). One reading of "eligible survivor" in § 932(*l*), then, is to equate it to those categories of people "entitled to benefits" under § 932(c), which references § 922(a). In other words, if an individual is a person listed in § 922(a), that person is an "eligible survivor" for the

13

purposes of § 932(*l*).    U.S. Steel supports this interpretation, arguing that a surviving spouse (or other survivor) can avoid filing a claim under § 932(*l*) as long as he or she meets the conditions in § 922(a), including the condition that the associated miner died due to pneumoconiosis.

In practice, this interpretation would establish an unavoidable Catch-22 for surviving spouses seeking benefits.  Under U.S. Steel's reading, a surviving spouse is not required to file a claim to obtain the benefits the miner has already been awarded before death.  Yet to obtain those benefits, a surviving spouse must somehow show that the miner died due to pneumoconiosis—which, it seems, would require a new claim.[4]  The absurd result: a surviving spouse must file a claim to show that he or she does not have to file a claim.  *Accord B & G Constr.*, 662 F.3d at 249–50 ("But if [the widow] succeeds in proving that she is an 'eligible survivor' by filing a new claim and showing that pneumoconiosis caused [the miner's] death, we do not discern what enhancement of her position . . . she would have received under the [amended § 932(*l*)] . . . .").

U.S. Steel argues that the cause-of-death showing would require only an "administrative filing," not a new claim.  (Pet'r's Br. at 54.)  This administrative filing "could be as simple as providing the [Department of Labor] a death certificate validating the cause of the miner's death."  (*Id.* at 54–55.)  We are not

---

[4] "Claim" is not defined in any relevant statute.

14

persuaded by this position, which amounts to nothing more than a proposal to change the nominal designation of the filing required of surviving spouses. We fail to see how this "administrative filing" would be meaningfully distinct from a "claim" that a surviving spouse had to file before March 23, 2010.

In sum, U.S. Steel's reading of "eligible survivors" renders § 932(*l*) a restatement of the already-existing requirements for survivors seeking benefits.

But the term "eligible survivors" avails itself of another construction: that it refers to surviving spouses, children, parents, or siblings as defined in terms of their relationships to and dependency on the miner and without regard to how the miner died. Under this interpretation, if these survivors meet the relational and dependency requirements—making them "eligible"—and can show that their associated miners were receiving benefits pursuant to an award when they died, the survivors can receive those benefits. If the otherwise-eligible survivors cannot make that showing, they must rely on § 932(c), in which case they must file a claim showing that the miner died due to pneumoconiosis.

This interpretation is not based on judicial imagination. In fact, the Secretary of Labor interpreted § 932(*l*) exactly that way when he overhauled the implementing regulations following the 1977 amendments that created § 932(*l*).[5] Under the heading "Survivors' Entitlement," the Secretary established three

_____

[5] These regulations were again reworked after Congress amended the benefits provisions in 1981.

15

requirements that entitled an individual to receive benefits: (1) the individual must be a surviving spouse, surviving divorced spouse, child, parent, brother, or sister;[6] (2) the individual was dependent on the miner for a certain period of time;[7] and (3) the miner had been receiving benefits under the benefits provisions when he died. 20 C.F.R. pt. 725.212(a)(1)–(a)(3)(i) (1980) (surviving spouses and surviving divorced spouses); *id.* pt. 725.218(a), (a)(1) (surviving children); *id.* pt. 725.222(a)(1)–(a)(5)(i) (surviving parents, brothers, and sisters).[8] These elements track the requirements of § 932(*l*) as it was originally drafted (and as it currently reads): a survivor could obtain benefits if he or she was "eligible"—if he or she met the Secretary's relationship and dependency definitions—and if the miner was receiving benefits when he died. *Accord B & G Constr.*, 662 F.3d at 252 (interpreting § 932(*l*) to provide benefits to "eligible survivors of miners who were receiving benefits at the time of their death"); *id.* at 244 n.12 (noting that the survivors still must prove their relationship to the miner). If an otherwise-eligible

---

[6] The Secretary defined these relationships in other sections. *See* 20 C.F.R. pt. 725.214 (1980) (defining a surviving spouse); *id.* pt. 725.216 (defining surviving divorced spouse); *id.* pt. 725.220 (defining child); *id.* pt.725.224 (defining parent, brother, and sister).

[7] Likewise, the Secretary defined dependency in other sections. *See* 20 C.F.R. pt. 725.213 (1980) (defining dependency for surviving spouses); *id.* pt. 725.217 (defining dependency for surviving divorced spouses); *id.* pt. 725.221 (defining dependency for children); *id.* pt. 725.225 (defining dependency for parents, brothers, and sisters).

[8] These three requirements were the common elements needed to obtain benefits across all categories of survivors. The Secretary required an additional element for surviving spouses (that the spouse had not remarried at the time he or she filed for benefits, 20 C.F.R. pt. 725.212(a)(1) (1980)), an additional element for parents (filing of proof of support within two years after the miner's death, *id.* pt. 725.222(a)(3)), and several additional elements for siblings (filing of proof of support and meeting certain age or disability requirements, *id.* pt. 725.222(a)(3)–(4)).

16

survivor could not show one of the elements, particularly the element that the miner was receiving benefits when he or she died, then the survivor would have to rely on other provisions, which would require a showing that the miner was totally disabled due to pneumoconiosis or that the miner died due to pneumoconiosis. *See* 20 C.F.R. pt. 725.212(a)(3)(ii) (1980); *id.* pt. 725.218(a)(2); *id.* pt. 725.222(a)(5)(ii).

We find this construction of "eligible survivor"—referring to a survivor who meets relationship and dependency definitions—a reasonable interpretation of the term. The term is susceptible, then, to multiple interpretations. When a term can be reasonably interpreted in multiple ways, the courts are left to determine its meaning by looking to the legislative history and employing the canons of statutory construction, which "embody sound generalizations about Congressional intent." *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1247 (11th Cir. 2008).

Section 1556 of the Affordable Care Act has no legislative history,[9] so we apply the canons of statutory construction. Doing so, we conclude that the term

---

[9] The Director mentions a comment by Senator Robert C. Byrd that purportedly supports the interpretation that survivors need not prove cause of death to become "eligible survivors" within the meaning of § 932(*l*). *Following the enactment* of the Affordable Care Act, Senator Byrd said (in relevant part), "I look forward to working to ensure that claimants get a fair shake as they try to gain access to these benefits that have been so hard won." 156 Cong. Rec. at 2083S–84S (daily ed. Mar. 25, 2010) (statement of Sen. Byrd).

The Senator's post-enactment statement does not constitute legitimate legislative history. *See Bruesewitz v. Wyeth LLC*, 562 U.S. ___, 131 S. Ct. 1068, 1081 (2011) ("Post-enactment

"eligible survivors" requires that survivors meet certain relational and dependency definitions, as established by Congress and the Secretary of Labor, but not that survivors must show that a miner died due to pneumoconiosis or that a miner was totally disabled by pneumoconiosis when he died.

Unlike an interpretation that requires survivors to prove their "eligibility" under § 932(c), this construction avoids rendering § 932(*l*) an altogether meaningless repetition of the existing requirements for obtaining survivors' benefits. *See Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120, 2125 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute." (internal quotation marks omitted)); *Wash. Mkt. Co. v. Hoffman*, 101 U.S. 112, 115–16 (1879) ("[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks omitted)); *Equal Emp't Opportunity Comm'n v. Louisville & Nashville R.R. Co.*, 505 F.2d 610, 613 (5th Cir. 1974) ("'There is a presumption against a construction which would render a statute ineffective or inefficient . . . .'" (quoting *United States v. Powers*, 307 U.S. 214, 217, 59 S. Ct. 805, 807 (1939)) (alteration in original)). We also believe that this

legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation."); *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074, 1080 (5th Cir. 1980) ("What happened after a statute was enacted may be history and it may come from members of the Congress, but it is not part of the legislative history of the original enactment."). Moreover, the meaning of the statement— giving a "fair shake" to "claimants"—escapes us. Whatever Senator Byrd meant, his words fall far short of supporting the proposition for which the Director cites it.

interpretation reconciles § 932(*l*) with the language in § 901(a), § 921(a), and § 922(a) and avoids the need to infer a repeal of contrary language in those unamended statutes. *See Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662, 127 S. Ct. 2518, 2532 (2007) ("We will not infer a statutory repeal unless the later statute expressly contradict[s] the original act or unless such a construction is absolutely necessary . . . in order that [the] words [of the later statute] shall have any meaning at all." (quoting *Traynor v. Turnage*, 485 U.S. 535, 548, 108 S. Ct. 1372, 1381–82 (1988)) (alternations in original) (internal quotation marks omitted)). If a survivor can meet the requirements of § 932(*l*), she is entitled to benefits, and the language in the unamended statutes does not apply to her. If a survivor cannot meet the § 932(*l*) requirements, she must file a claim and make the appropriate showing—including, per § 922(a), that the miner died due to pneumoconiosis.

We hold that, to obtain benefits under the amended § 932(*l*), Kathy Starks was required to show only that she met the appropriate relational and dependency requirements rendering her an "eligible survivor" and that Eligah was receiving benefits when he died. The record indicates that she met those requirements. (*See* Admin. R. at 239.)    She was not required to show that Eligah died due to pneumoconiosis. We therefore agree with the conclusion of the Benefits Review

Board to the extent that it concluded that survivors who meet the requirements of § 932(*l*) are not subject to language in § 922(a).

We note that it could be argued that a survivor must file a "claim" even to meet the two requirements in § 932(*l*). It is true that some submission of information is required. But this submission must fall short of a "claim"— otherwise, § 932(*l*) would have no effect whatsoever, even under the interpretation we adopt. We join the Third and Fourth Circuits and the Board in declining to read § 932(*l*) to eliminate necessary administrative submissions. *See Stacy*, 671 F.3d at 389 ("[S]urvivors will need to file some sort of 'claim' in order to notify the Office of Workers' Compensation Programs of the miner's death and the survivor's current status."); *B & G Constr.*, 662 F.3d at 244 n.12 ("[S]urely a widow seeking benefits must file something in order to receive them. After all, . . . a claimant might not be the miner's real widow."); *Pothering*, 861 F.2d at 1328, n.13 ("We do not read [§ 932(*l*) as originally drafted] as prohibiting filings for which there is an administrative need—such as providing the OWCP with . . . information regarding the survivor's relationship."); *Stacy v. Olga Coal Co.*, 24 Black Lung Rep. (Westlaw) 1-207, *3 (Ben. Rev. Bd. 2010) ("[S]urvivors will need to file some sort of paperwork or 'claim[]' [under § 932(*l*) as amended in 2010], because a survivor cannot begin to receive benefits unless the Office of Workers' Compensation Programs is notified of the miner's death and of the survivor's current status."). A

20

survivor seeking benefits is not relieved of a burden to act. But a survivor is relieved of the burden to show anything beyond § 932(*l*)'s two requirements.

### B.

Even if a survivor seeking benefits under the amended § 932(*l*) does not need to show cause of death, U.S. Steel contends, Kathy Starks cannot benefit from the provision because the Affordable Care Act's § 1556(c) made § 932(*l*) retroactive only to miners' claims filed after January 1, 2005—not to survivors' claims. U.S. Steel argues that Kathy cannot apply the provision to her claim because Eligah filed his original claim for benefits in 1998, long before the cutoff.

The text of § 1556(c) refutes U.S. Steel's argument. Section 1556(c) applies the "amendments made by this section . . . to claims filed under [the benefits provisions] . . . after January 1, 2005, that are pending on or after" March 23, 2010. The "amendments made by this section" are the amendment to § 932(*l*) and an amendment to § 921(c)(4), a provision that creates an evidentiary presumption that applies in both miners' claims and survivors' claims. Section 1556(c) does not distinguish between miners' claims and survivors' claims. The plain meaning of § 1556(c) is that anyone—miner or survivor—who filed a claim for benefits after January 1, 2005, that remained pending on March 23, 2010, can receive the benefit of the amendments. *Accord Vision Processing*, 705 F.3d at 555 ("Language and context show that the 2010 amendments apply to all survivor-benefit and all miner-

21

benefit claims filed after January 1, 2005, and pending on March 23, 2010 . . . .");

*Stacy*, 671 F.3d at 388 ("[T]he plain language of [§ 1556(c)] requires that amended § 932(*l*) apply to *all* claims filed after January 1, 2005, that are pending on or after March 23, 2010.").

U.S. Steel concedes that the word "claims" in § 1556(c) means either a survivor's claim or a miner's claim. (Pet'r's Br. at 33.)  But U.S. Steel argues that applying the amended § 932(*l*) to survivors' claims creates a logical inconsistency. Section 932(*l*), the argument goes, eliminates the need for survivors to file a claim. Section 1556 of the Affordable Care Act applies § 932(*l*) to all claims filed within the specified period prior to March 23, 2010.  If survivors are not required to file a claim under § 932(*l*), U.S. Steel asks, how could an amendment to § 932(*l*) apply to survivors' claims?

That argument fails.  Section 1556(c) applies the amended § 932(*l*) to all claims filed between January 1, 2005, and March 23, 2010.  During that period, both miners and survivors were required to file claims to receive benefits.  Section 1556(c) therefore applies the amended § 932(*l*) to survivors' claims as well as miners' claims.  Just because the application of the amended § 932(*l*) to a claim operates to eliminate the need for that claim does not render its application illogical or unworkable.

U.S. Steel also argues that the application of the amended § 932(*l*) to both survivors' and miners' claims filed in the period of retroactivity contradicts the Third Circuit's and the Board's interpretations.

The Third Circuit considered a case in which a miner filed for benefits before January 1, 1982—the effective date of the 1981 amendment to § 932(*l*). *Pothering*, 861 F.2d 1321. His surviving spouse then filed a claim for benefits in 1984, believing that § 932(*l*), as amended in 1981, required her to file a new claim. Nonetheless, she argued that she should benefit from the pre-1981 version of § 932(*l*) (which eliminated her need to file a claim) instead of the post-1981 version (which nullified § 932(*l*) "with respect to a claim filed" after January 1, 1982). Essentially, she argued that the 1981 addition to § 932(*l*)—"except with respect to a *claim* filed" on or after January 1, 1982—referred to a miner's claim, not a survivor's claim. So if the miner filed a claim *before* January 1, 1982, the survivor could still benefit from § 932(*l*).

The Third Circuit agreed. The court considered the "clear import of [the 1981 amendment to § 932(*l*)]" to be "that no miner or miner's family should be prejudiced by the 1981 amendments." *Id.* at 1328. Besides amending § 932(*l*), the 1981 amendments also removed several statutory presumptions. Miners who filed pre-1981 claims for benefits had undoubtedly relied on many of these presumptions in establishing their cases. To require surviving spouses to file a

23

new claim under post-1981 rules would require them "to face a new evidentiary hurdle" by proving elements that their miner spouses had originally established by presumption—which "would permit the unfairness to miners' survivors [that] we believe [the 1981 amendment to § 932(*l*)] sought to prevent." *Id.* So the 1981 amendment to § 932(*l*), by excepting "claims filed . . . on or after" January 1, 1982, referred only to miners' claims filed on or after that date. The Board agreed with this construction in a similar case. *See Camco Mining*, 13 Black Lung Rep. 1-17 at *2–3.

The meaning of these rulings, U.S. Steel submits, is that the word "claim" in § 1556(c)—at least when applying the amendment to § 932(*l*)—means only a miner's claim and not a survivor's claim. We are not persuaded.

Even if we agree that the word "claim," as used in the language added to § 932(*l*) in 1981, referred only to a miner's claim (which we are not bound to do), it does not follow that the word "claim," as used in § 1556(c) when referring to the amended § 932(*l*), means the same thing. We are mindful of the "natural presumption that identical words used in different parts of the same act are intended to have the same meaning." *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574, 127 S. Ct. 1423, 1432 (2007) (quoting *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433, 52 S. Ct. 607, 609 (1932)). But this "presumption is not rigid and readily yields" when the context suggests a variation

24

in meaning.  *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 595, 124 S. Ct. 1236, 1245 (2004).  Section 1556(c) applies the amended § 932(*l*) to "claims" filed in the specified period.  Both miners and survivors were required to file claims during the specified period.  If this context does not demand a variation in the meaning of the word "claim," we do not know what context would.  Any other reading of the word in this context is, to borrow the Fourth Circuit's term, "tortured."  *Stacy*, 671 F.3d at 389.

We agree with the Board that the amended § 932(*l*) applies retroactively to survivors' claims—including claims by surviving spouses—that were filed on or after January 1, 2005, and were pending on March 23, 2010.  Kathy Starks filed her claim after January 1, 2005, and U.S. Steel does not argue that her claim was not pending on March 23, 2010.  Kathy therefore enjoys the benefit of § 932(*l*) as amended by the Affordable Care Act.

## C.

U.S. Steel's remaining contention is a constitutional challenge to the retroactive application of § 932(*l*).  U.S. Steel argues that § 1556(c), as it applies the amended § 932(*l*), violates the Due Process Clause of the Fifth Amendment in two ways.  First, retroactive application of § 932(*l*) has no rational legislative purpose.  Second, the choice to retroactively apply § 932(*l*) only to claims filed after January 1, 2005, was an arbitrary one.  We disagree with both contentions and

25

conclude that § 932(*l*)'s retroactive application does not violate the Due Process Clause.

The retroactive application of legislation meets the test of due process if it "is supported by a legitimate legislative purpose furthered by rational means." *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729, 104 S. Ct. 2709, 2717–18 (1984). To be legitimate, the purpose must simply be rational. *Id.* at 730, 104 S. Ct. at 2718 ("[T]h[e] burden [of the Due Process Clause] is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose."). Importantly, the retroactive application of legislation must be justified separately from the prospective application of legislation; a mere assertion of the statute's overall constitutionality may not suffice to justify its retroactive application. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17, 96 S. Ct. 2882, 2893 (1976) ("The retrospective aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former.").

U.S. Steel first argues that the retroactive application of the amended § 932(*l*) has "no legitimate purpose."[10]  (Pet'r's Br. at 23.)  We disagree. Conceivably, Congress amended § 932(*l*) to lighten the burden on survivors

---

[10] It does not matter that the amendment to § 932(*l*) lacks any statement of purpose or legislative history. *See F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315, 113 S. Ct. 2096, 2102 (1993) ("[W]e never require a legislature to articulate its reasons for enacting a statute . . . .").

seeking to receive the benefits their associated miners had already been awarded. *See Stacy*, 671 F.3d at 383 (discerning that Congress amended § 932(*l*) to "compel [coal mine] operators who have benefited from a miner's labor in his productive years to care for that miner in his declining years and for his spouse or other eligible dependents after his death"). That purpose serves to justify both the future effect of § 932(*l*) and its retroactive application to those whose claims pended on the date of enactment. *Groves*, 705 F.3d at 558 (holding that Congress made a rational choice in retroactively applying the amended § 932(*l*)); *Stacy*, 671 F.3d at 383–84 ("[T]he wholly rational and legitimate purpose for applying amended § 932(*l*) retroactively is to compensate the survivors of deceased miners for the effects of disabilities bred in the past." (internal quotation marks omitted)); *accord B & G Constr.*, 662 F.3d at 258 ("Congress' decision automatically to extend benefits to eligible survivors . . . represents a legislative choice to compensate a miner's dependents for the suffering they endured due to the miner's pneumoconiosis or as a means to provide a miner with peace of mind that his dependents will continue to receive benefits after his death."); *Keene v. Consolidation Coal Co.*, 645 F.3d 844, 849 (7th Cir. 2011) (considering it a "rational purpose . . . to give miners and their survivors whose claims were recently filed a better shot at obtaining benefits"). Retroactive application of the amended § 932(*l*) does not violate due process.

U.S. Steel also contends that Congress's decision to pick January 1, 2005, as the cutoff date for § 932(*l*)'s retroactive application was an arbitrary choice. Because this choice was arbitrary, it cannot constitute a "rational means" of effecting Congress's legislative purpose, even if that purpose is legitimate. Again, we disagree. As the Sixth Circuit has recognized, when retroactively applying legislation, Congress has "wide policy discretion in drawing the line at one point in time over another." *Groves*, 705 F.3d at 558; *accord R.A. Gray*, 467 U.S. at 731, 104 S. Ct. at 2718–19 (deferring to Congress's designation of a particular period for a statute's retroactive application); *Stacy*, 671 F.3d at 384 ("Congress's selection of a precise filing date is a classic line-drawing exercise uniquely within the competence of the legislative branch."). The selection of January 1, 2005, in fact, may reflect Congress's decision to adopt a measured approach to applying § 932(*l*) retroactively, allowing only claims filed in the last five years—as opposed to a longer time period—to enjoy its benefit. *See Groves*, 705 F.3d at 558; *Stacy*, 671 F.3d at 384.

We agree with the Board's conclusion that the retroactive application of § 932(*l*) does not violate the Due Process Clause of the Fifth Amendment.

## IV. CONCLUSION

Contrary to U.S. Steel's contentions, § 932(*l*), as amended by § 1556(b) of the Affordable Care Act, eliminates the need for survivors who can meet its

28

requirements to prove that their associated miners died due to pneumoconiosis. It applies retroactively to survivors' claims filed in the specified period, and this retroactive application does not violate the Due Process Clause of the Fifth Amendment.

U.S. Steel's petition to review the Board's ruling is accordingly DENIED.